ISAAC KOSKOFF, ADMINISTRATOR, *vs.* ALBERT GOLDMAN.

Third Judicial District, Bridgeport, October Term, 1912.

HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

A landlord whose duty it is to keep the leased premises in repair cannot escape liability for their defective and dangerous condition merely because he has employed a competent carpenter to make such repairs as he may find to be necessary on inspection. Under such circumstances the negligence of the carpenter, either in the matter of inspection or repair, is the negligence of the landlord.

It is a sound and generally accepted rule that passageways in, or approaches to, a building, which are retained under the control of the landlord for the common use of the several tenants as a means of access to their respective tenements, are to be maintained and repaired by him, and that for negligence in the performance of this duty he is liable to a tenant who is thereby injured.

An involuntary act resulting from sudden fright cannot be imputed to the actor as contributory negligence.

The plaintiff's wife, while occupying with him a second-story tenement in the defendant's building reached by an outside stairway, accidentally stumbled or fell against the railing at the head of the stairs, which gave way and caused her to fall to the pavement below where she received fatal injuries. In an action by her administrator to recover damages, the plaintiff introduced evidence of the dangerous and insecure condition of the railing as it appeared on the morning following the accident and before any repairs had been made, whereupon the defendant landlord testified in defense that he replaced the broken railing on the same day that it gave way. *Held* that in rebuttal the plaintiff might show that no repairs were made for several days after the accident.

A witness was asked and allowed to state the number and ages of the decedent's children. *Held* that the answer could have worked no harm in arousing sympathetic considerations, since all but one of the children testified as witnesses and thus were known to the jury; nor was it open to the criticism that it laid the basis for a recovery for loss to the family, since there was no such claim, nor any objection to the charge on the assessment of damages.

The plaintiff offered evidence of declarations of the decedent showing that she was aware that certain repairs to the railing had been made by the landlord six weeks or more before the accident. *Held* that under General Statutes, § 705, this evidence was properly admitted.

Counsel for the plaintiff in argument to the jury alluded to the de-

Koskoff *v.* Goldman.

fendant as one who had "amassed his money" by "slick and smooth" methods, and had "got his tenement houses together." The court in its charge called the jury's attention to the remark as improper, and cautioned them to wholly disregard it. *Held* that under these circumstances a new trial ought not to be ordered, although the remark was one that should not have been made.

The trial court is under no obligation to instruct the jury in the language of the requests. Its full duty is done if the instructions given are correct in law, adapted to the issues, and sufficient for the jury's guidance in the determination of the case before them.

A passage in a charge referring to correct principles of law previously stated at length, and applying them in brief terms to the facts in hand, must be interpreted in the light of such principles and of the charge as a whole.

Argued October 31st—decided December 19th, 1912.

ACTION to recover damages for personal injuries resulting in the death of the plaintiff's intestate and alleged to have been caused by the defendant's negligence, brought to the Superior Court in New Haven County and tried to the jury before *Bennett, J.;* verdict and judgment for the plaintiff for $3,500, and appeal by the defendant. *No error.*

July 4th, 1910, the defendant was, and for a considerable period of time had been, the owner of premises known as No. 448 Congress Street in the city of New Haven. In the rear of these premises was a three-story building. The lower floor was occupied by the defendant as a place of business; the two upper floors as tenements by different tenants. Entrance to the tenements was by a stairway on the outside of the building leading from the ground to a landing place which was substantially on a level with the second floor of the building. This stairway ran parallel to the wall, and was built close to it. The steps extended straight out from the building, except that the four upper ones were carried in a curve, so that a person ascending the stairs was, when he reached the top step, brought face to face with a door leading into the building, and stood upon a

Koskoff *v.* Goldman.

landing which was of the size and shape of one of the curved steps. This door was close to the southwest corner of the building, and furnished the only means of access to the tenements in the building. The occupants of the upper-floor tenement in reaching their apartments, having passed through the door, ascended a flight of interior stairs. All persons entering or leaving either of the tenements were compelled to pass up or down this outside stairway, over the landing which the upper step provided, and through this door, and the stairway, landing, and door were used in common by all the occupants of the two tenements.

The stairway and landing were covered by a roof, supported by wooden columns, extending practically the entire length of the building, thus giving the external appearance of a second-story porch. Surrounding it on the three sides not against the building was a railing with upright spindles. This railing ran from post to post on the side, and from end post to a pilaster fastened to the wall at the two ends. These end railings were about three and one half feet in length. The upper step or landing, like the three below it, was, on the inner side of the curve of the stairs, somewhat narrower than the other steps, and on the outside somewhat wider. The outer or wider end was next to the south end railing, which joined the house a few inches from the doorway. This railing was held in place by being attached to the pilaster and corner post. The landing step was about twelve feet above the ground, which, directly under this end of the railing, was covered with solid pavement.

On said date the plaintiff's intestate, Shendall Koskoff, her husband and their children, occupied the second-floor tenement, and for some six months had been its tenants. Prior to that time they had lived in the tenement above.

About three o'clock in the afternoon of that day Mrs. Koskoff took the table-cloth from the table where the family had been eating, and, with it in her hand, stepped out of the entrance door on to the landing step. A moment or two later she fell through the end railing described, carrying it away with her in her fall, and struck the pavement below, with the result that she received injuries from which she died that night.

The above facts were uncontroverted. The plaintiff offered evidence to prove, in addition, that the railing which gave way was at the time, and for a considerable time had been, in an unfit and dangerous condition by reason of its insecure and improper construction, want of repair, and rotten condition; that the stairway and landing were thereby rendered unsafe for their intended use in connection with the tenement which the intestate occupied; that this unfit and unsafe condition of the railing, stairway, and landing was, and for some time had been, known, or ought to have been known, to the defendant; that this condition was occasioned by the defendant's negligence; and that Mrs. Koskoff's injuries and death were due directly to it. Evidence of two witnesses was presented, to the effect that complaint of the defective condition of the railing had been made to the defendant on Mrs. Koskoff's behalf about six weeks before the accident.

The defendant offered testimony to disprove these charges. Included in it was testimony tending to show that any weakness which may have existed in the railing on July 4th was caused by hard and improper usage to which the Koskoff family and its guests had subjected it during the two or three days immediately preceding, and of which the defendant had no knowledge. He denied the receipt of complaints about the condition of it, and all knowledge or suspicion that it was not in proper condition at any time. He also testified, and

offered a witness to corroborate him, that only a few weeks before Mrs. Koskoff's fall he had employed a carpenter of long experience to look over the building generally, and the approaches in particular, to see what repairs ought to be made, and to make them. He also contended that he was under no obligation to keep the stairway and railing in repair, and was not liable for its nonrepair.

The only testimony as to Mrs. Koskoff's movements and conduct, between the time she passed out of the door with the table-cloth and the time when she was on her way to the ground, was that recited in the opinion.

*Spotswood D. Bowers* and *Benjamin Slade,* for the appellant (defendant).

*Robert C. Stoddard,* for the appellee (plaintiff).

PRENTICE, J.   The defendant says that the court erred in refusing to set aside the verdict. An examination of the evidence leads us to the contrary conclusion.

The jury might reasonably have found the defendant guilty of negligence. Evidence was before it upon which it reasonably might have found that the railing in question had for a considerable time been in an unfit and dangerous condition; that some six weeks prior to the accident complaint of that condition had been made to the defendant on behalf of the plaintiff's intestate; that the defendant had then promised to repair it; that thereafter nothing was done in that direction beyond possibly the driving of a nail or two; that, whatever was done, the attempted repair was negligently and improperly done and wholly inadequate; that the unfit and dangerous condition remained; that this continuing condition was readily discoverable, and would have been discovered at any time by a reasonable

inspection; and that the intestate received her fatal injuries as the proximate result of such condition.

The defendant cannot escape liability upon the ground that he had employed a competent carpenter to do what the conditions appeared to him to demand, if such was the case. If the carpenter was negligent, either in not making a reasonable inspection to discover the defective condition of which the defendant had been warned, or, having discovered it, in failing to make such repair as was reasonably required, or in making a carelessly inadequate one, that negligence of the servant was the negligence of the defendant, upon whom, under the conditions which, in view of the verdict, the jury must have found existed, the duty of repair rested. *Wilson* v. *Willimantic Linen Co.*, 50 Conn. 433, 465; *McElligott* v. *Randolph*, 61 Conn. 157, 162, 22 Atl. 1094; Wood on Master & Servant, § 438.

It could not reasonably have been found that the intestate was guilty of contributory negligence. The testimony of the only eye-witness of the immediate fall, who was a sister of the defendant and a witness on his behalf, was that she sat in her window of an adjoining house which looked out upon Mrs. Koskoff's entrance only a short distance away, and that she saw the whole occurrence, which she described in the following language: "The woman came out of the house carrying a table-cloth. . . . She stopped a moment and this loud shot, cannon shot, whatever it was, and I know I remember I started from the chair I was seated in, and she started forward and fell, throwing her weight against this rail, dead weight, and then the balustrade gave way and the next I saw was the woman on the ground." This testimony, to the effect that the intestate's contact with the railing which gave way was involuntary and the result of a sudden fright, relieves her of all responsibility for her injury through a negli-

gent act, and there was no other evidence tending to show a different situation.

Several rulings upon the admission of testimony are challenged as erroneous.  A number of these are of a precisely similar character, and admitted evidence to establish the time when the railing was replaced and repaired by the defendant after the accident.  The circumstances attending these rulings were the following: The plaintiff had introduced an experienced builder, who testified that he visited the premises, in company with one of the plaintiff's counsel, on the morning of the day following the accident, and examined the conditions as they were then disclosed, before the railing had been replaced or repair made.  The plaintiff relied upon this witness to establish that the method of construction thus laid bare was not safe or proper for ordinary use, and that the means employed for holding the rail in place indicated a failure to exercise proper care.  The defendant, as a witness in his own behalf, subsequently testified that on the afternoon of the day of the accident he caused the railing, which had been carried away, to be replaced and necessary repairs made.  If the testimony thus given was true, that of the plaintiff's builder could not have been.  A question of veracity was thus presented, and it was one which had an important bearing upon the ultimate questions at issue.  The evidence admitted bore directly upon this question of veracity.  It was admitted as bearing upon that question only, and the jury were cautioned to give it no other significance.  In fact it could not well have had other significance attached it to, for the reason that a replacement of the railing carried away by Mrs. Koskoff in her fall could hardly have furnished a reasonable basis for an inference of prior improper construction, and furthermore the defendant had himself already testified to the replacement.  The only

matter in issue was the time when the conceded act was done, and upon that issue the evidence was clearly admissible. The rulings were not in violation of either the rule that evidence of subsequent repairs may not be received for the purpose of showing prior negligence, as laid down in *Nalley* v. *Hartford Carpet Co.*, 51 Conn. 524, or that forbidding the contradiction of a witness as to an answer he may have made in respect to an irrelevant fact, as stated in *Barlow Bros. Co.* v. *Parsons*, 73 Conn. 696, 49 Atl. 205.

A son-in-law of Mrs. Koskoff having been called as a witness by plaintiff's counsel, he was, among the preliminary questions, asked to describe the building, its tenants, Mrs. Koskoff's tenement, and the number and ages of the members of her family. The answer to the last inquiry was objected to as irrelevant and immaterial. Having been admitted, it elicited the information that she had two sons and three daughters, aged, respectively, twenty-four, twenty, eighteen, thirteen, and ten or eleven years. The admission of this testimony is complained of (1) as countenancing an attempt to arouse the sympathies of the jury, and (2) as laying the foundation for a recovery upon the basis of the loss to the family. It is a sufficient answer to the first suggestion that it is difficult to discover what harm the answer given could have worked, since all of the children save only the eighteen year old daughter were witnesses in the case, and their existence thus came to the knowledge of the jury. As to the second, the answer is to be found in the fact that there was no claim to recover upon the basis indicated, and that the rule which the court gave to the jury for the assessment of damages was one which is not subjected to criticism.

Evidence of Mrs. Koskoff's declarations to her son-in-law respecting the repairs was admissible under the statute. General Statutes, § 705. The declarations of

the son-in-law to Mrs. Koskoff, which are now complained of, came in without objection or ruling.

Other rulings assigned as errors call for no discussion. They are either manifestly correct, or relate to inconsequential matters.

The appeal contains thirty-five reasons of appeal, based upon the court's failure to charge as requested, and upon portions of the charge as given. It would be profitless to discuss all of these assignments, or even the minor part of them which have seemed to defendant's counsel of sufficient merit or importance to call for consideration in their brief. The court, as we have repeatedly held, was under no duty to instruct the jury in the language of the requests. It performed its full duty if it gave instructions correct in law, adapted to the issues, and sufficient for the jury's guidance in the determination of them upon the evidence, and the ultimate facts as they might reasonably be found to be established by the evidence. *Water Commissioners* v. *Robbins*, 82 Conn. 623, 636, 74 Atl. 938. Our examination of the charge has disclosed no failure on the part of the court in the performance of the duty resting upon it. The subject-matter of the requests, in so far as it was pertinent, was all dealt with, and adequately and appropriately dealt with, and the criticisms of the few passages from the charge which are made in the brief are not well founded when the entire charge is considered.

The passage in which the jury were told that the duty of maintaining the stairway and landing in a reasonably safe condition and repair was upon the defendant, if it should be found that they were retained by him as landlord as a common passway for all tenants of the building, forms no exception to this statement. The court had just concluded a carefully stated and correct exposition of the law governing the subject,

and in the passage complained of turned to make application of it in brief terms to the case in hand. Read together, the instructions were not only not erroneous, but also not easily susceptible of misconstruction or misunderstanding. It is a rule of sound reason, and one generally accepted, that the duty of maintenance and repair rests upon a landlord in respect to common passageways and approaches in or to a building occupied by several tenants, which passageways or approaches are retained under his control for the use of the several tenants as a means of access to the portions of the premises leased to them, and that the landlord is liable for injuries received by a tenant by reason of the landlord's negligence in the performance of this duty. *Looney* v. *McLean*, 129 Mass. 33, 35; *Sawyer* v. *McGillicuddy*, 81 Me. 318, 322, 17 Atl. 124; *Peil* v. *Reinhart*, 127 N. Y. 381, 384, 27 N. E. 1077; *Gillvon* v. *Reilly*, 50 N. J. L. 26, 27, 11 Atl. 481. This was the court's instruction.

One of the plaintiff's counsel in the course of his argument, speaking of the defendant, used the following language: "On the other side, this man who has amassed his money, slick, smooth, got his tenement houses together." In its charge the court called attention to this remark as improper, and cautioned the jury that it was to be disregarded, and the suggestion it contained wholly dismissed from consideration, and emphasized the fact that the richness or poverty of the defendant was not a matter to be taken into account in reaching their conclusion. The remark was one which should not have been made, but in view of the action of the court we should not feel justified in granting a new trial on account of it. *State* v. *Laudano*, 74 Conn. 638, 645, 51 Atl. 860; *State* v. *Washelesky*, 81 Conn. 22, 29, 70 Atl. 62.

The defendant complains of the attitude of the court

toward his counsel during the trial, and urges that it was necessarily harmful to him. We fail to discover just cause for this complaint.

There is no error.

In this opinion the other judges concurred.