## BUELL v. SIDERMAN.

1. TRIAL—ARGUMENT OF COUNSEL—HARMLESS ERROR.

> Where defendant was called by plaintiff as a witness under the statute, the action of plaintiff's counsel in asking the jury in his argument what the inference would be because of the failure of counsel for defendant to call defendant to testify on his own behalf was harmless error where the court stated that counsel for defendant was under no obligation, after examining defendant when called by plaintiff, to call him again as a witness.

2. SAME.

> The argument of counsel for plaintiff, in an action by the receiver of a bankrupt estate to recover the value of goods sold by the bankrupts to defendant, that the bankrupts were indicted evidently for the purpose of endeavoring to dispose of their stock to defraud creditors and, referring to the sale, whether, if a "man even though you have been dealing with him, came to your house in this mysterious way, having said nothing about it prior to that time, would it not raise some question in your mind as to what he was trying to do?" and whether it would call for an investigation of his financial circumstances, was harmless error, where the evidence relating to the indictment got into the case by concession of counsel and the evidence was conflicting as to what was said at the time of sale of the goods.[1]

Error to Wayne; Murphy, J. Submitted April 5, 1917. (Docket No. 38.) Decided July 26, 1917.

Assumpsit by Edwin D. Buell, trustee in bankruptcy of Morris F. Schloss and Herman N. Aserson, copartners as Schloss & Aserson, against Louis Siderman for goods sold and delivered. Judgment for plaintiff. Defendant brings error. Affirmed.

---

[1] On comment by prosecuting attorney on failure of defendant to produce witness as ground for new trial, see notes in 46 L. R. A. 641; 34 L. R. A. (N. S.) 811.

*Selling & Brand,* for appellant.

*Clark, Emmons, Bryant & Klein,* for appellee.

MOORE, J. This suit was commenced by declaration containing all the common counts in assumpsit. It is brought to recover $1,412.88, the value of clothing shipped to and received by defendant, less a possible shortage. The defendant pleaded the general issue, and gave notice that the goods for which suit was brought were part of an order for $3,426.88 worth of goods, payment for which was to be $1,000 on the receipt of the goods, and the balance to be paid in six months. It is further claimed the balance of the goods were not received, and that defendant is entitled to recoup his damages to an amount equal to the value of the goods for which suit is brought. From a judgment for $1,505.56 in favor of the plaintiff, the case is brought here by writ of error.

A general summary of the situation may be of advantage: Schloss & Aserson were manufacturing clothiers in Chicago for a number of years, making a specialty of blue serge suits. Defendant is a retail clothier, operating two stores in Detroit. He had bought clothing from Schloss & Aserson previous to the transaction involved here. On Friday, February 13, 1914, he received a telegram as follows:

"Will be in Detroit Sunday morning. Will you be at home. Wire reply collect.
                [Signed] "SCHLOSS & ASERSON."

He replied to the telegram, and Mr. Aserson came on the following Sunday morning to defendant's residence, which was upstairs and next to one of his stores. There was some talk about a sale of goods by Mr. Aserson to the defendant, in quantities and at prices that would total $3,426.88. On Monday morning a sale was arranged, about the terms of which the claims

of the parties are conflicting. A memorandum appears in the record, which totals $3,426.88; but it was not signed and contains no statement about the payments. Mr. Aserson delivered samples of the goods, and part of the goods were shipped from Chicago that day. The goods were received by defendant a few days later. On the same day the goods were sold a petition in bankruptcy was filed against Schloss & Aserson, but, as no receiver was then appointed, Schloss & Aserson shipped another case of goods via the Pere Marquette Railroad. After these goods had been shipped the plaintiff Buell was appointed receiver of Schloss & Aserson, and obtained an injunction against the Pere Marquette, forbidding it to deliver the case of goods which was on the way. Defendant was notified by the railroad company of the injunction, and immediately consulted his attorney and as a result correspondence ensued between defendant's attorney and the attorney for the receiver, which did not result in any adjustment, and suit followed, with the result already stated.

The defendant was called as a witness under the statute by the plaintiff. Serious complaint is made of the latitude permitted in his examination; counsel contending that it tended to create an impression that there was a conspiracy to defraud Schloss & Aserson's creditors, and also as to his examination about what he did to supply the goods, which he claimed he was entitled to, that were not shipped to him. An examination of the entire testimony of this witness does not convince us there was any abuse of the discretion permitted to a trial court in the conduct of a trial.

Serious complaint is made of the argument of counsel. It is said he misquoted the testimony. The argument was quite fully taken. When counsel for appellee stated what he claimed for the testimony of the defendant, counsel for appellant at once interrupted him,

and stated what he claimed defendant had testified to. The jury were instructed:

"To arrive at a right conclusion you are dependent, of course, upon the testimony given here in open court, and you are to be guided in your examination of the case, and in arriving at your decision, solely and alone by such testimony as you accept as reliable and worthy of your belief and acceptance."

The record shows the following:

"Mr. Selling proceeds with and finishes his argument.

"Final argument for plaintiff by Mr. Bogle.

"*Mr. Selling:* Now, Mr. Bogle, will you repeat what you said, that I may have an exception to it?

"*Mr. Bogle:* I stated that Mr. Selling, at the close of our evidence, did not put Mr. Siderman on the stand, and I want to know what the natural inference from that would be, whether he was afraid of what Mr. Siderman would say, putting him on his own defense.

"*Mr. Selling:* I take it that is entirely improper, in view of the fact that he was called before the defendant could properly have been called upon to make his defense, and was not only examined and re-examined, but recalled and cross-examined at length.

"*The Court:* I think that move is one which is a proper matter for argument to the jury. I personally ought to say to the jury at this time that the plaintiff called the defendant as his own witness, as he had a right to do under a special provision in the laws of this State; you may not have observed that at the time, but it is proper, in view of this objection, to say to you that the plaintiff put Mr. Siderman on the stand as part of his own case, and the defendant, having been so called, was examined by the plaintiff's counsel and examined by his own counsel, Mr. Selling, and the matter traversed, covered pro and con. Now there is no obligation on the part of the defendant, that having been done, to call Mr. Siderman then again as a witness. It could have been done, but there was no necessity for it. The fact that it was not done, I think, is a proper matter for such argument as counsel may

wish to make to you on the subject. (Exception for defendant.)"

The matter seems to have dropped there. It would not be claimed that, if Mr. Siderman had not been called as a witness, the fact might have been commented upon. The fact that plaintiff called him under the statute did not preclude defendant from making him his own witness, and what was said and done about his failure to do so does not make reversible error.

The following part of the argument of Mr. Ferris appears in the record·

"It is our contention that, Mr. Siderman having received goods from this bankrupt, he should pay the reasonable value therefor. He admits the price he has charged was reasonable, making the total amount of the claim for the goods he received $1,412.85. In answer to that he says he does not want to pay any of that money out; he does not want to see the creditors. of Schloss & Aserson get what they are rightfully entitled to; according to my opinion, he does not want to see the trustee of this estate, for the creditors of that bankrupt—and we admit, we cannot deny it, that the bankrupts, so we are informed, are indicted for doing the very thing they have done, endeavoring to dispose of their stock to defraud creditors was evidently the charge. Taking these things together, we leave it to you, and if a man, even though you had been dealing with him, came to your house in this mysterious way, having said nothing about it prior to that time, would it not raise some question in your minds as to what he was trying to do? Would you not investigate and find out what his financial circumstances were? * * *

"*The Court:* Is there any other matter to which counsel desire the attention of the jury to be called?

"*Mr. Selling:* I call your honor's attention in view of the correspondence, and the argument of the opposing counsel, to our request to charge No. 18.

"*The Court:* I think I have said all I want to say about that, Mr. Selling.

"*Mr. Selling:* Your honor will give me an exception."

The eighteenth request reads:

"(18) There is no evidence in this case from which you have any right to infer that, in these transactions with Schloss & Aserson, Mr. Siderman did not act in perfect good faith."

It is said the reference to the indictment of Mr. Aserson and the refusal to give the eighteenth request constitute error. It may be well to know how the testimony in relation to the indictment got into the case. The deposition of Mr. Aserson was being read when the following occurred:

"Mr. Bogle continues reading the deposition to the end; there being no cross-examination.

"*Mr. Selling:* Will it be conceded that Mr. Aserson is under indictment for some kind of offense in these bankrupt proceedings? It is so testified to in the affidavit of a member of your firm; we did not want to bother about it, and offer the affidavit, if you will concede it.

"*Mr. Bogle:* I am informed that that is true.

"*Mr. Selling:* It is understood that we are both informed that this witness is under indictment for some kind of offense against the bankrupt law, as it appears in an affidavit filed by a member of your firm in this suit."

It is also well to recall some of the testimony. Mr. Aserson testified in part:

"*Q.* 22. Now state just what was said by you and by him at the time you took the order, as to the method of paying for it.

"*A.* Nothing more than he was to receive the merchandise and to pay for it.

"*Q.* 23. Nothing was said about the time the check was to be sent?

"*A.* Nothing but on receipt of the goods. * * *

"*Q.* 55. Did the price of these grades of suits change materially between February 16 and April 1, 1914, in Chicago?

"*A.* They remained the same.

"*Q.* 56. Do you recall anything in the conversation with Mr. Siderman in Detroit, at the time he bought these goods, regarding the conditions of the sale or the terms of payment that you haven't already told us.

"*A.* I don't know of anything.

"*Q.* 57. Was anything said about who was to pay the freight from Chicago?

"*A.* No, sir; it is customary in the clothing business for the purchaser to pay the freight.

"*Q.* 58. Was anything said by you or Mr. Siderman about his paying $1,000 on delivery of the goods and having time on the balance?

"*A.* I don't remember.

"*Q.* 59. Was anything said by you or Mr. Siderman at that time about his having six months in which to pay for these goods?

"*A.* I don't believe it.

"*Q.* 60. Do you recall anything at all being said in that conversation, except as you have already stated, that he was to send a check when the goods arrived?

"*A.* I cannot recall anything else."

It is the claim of the defendant that he could not get the goods at all in April that were not delivered. It was also his testimony that he was to pay $1,000 on receipt of the goods and have six months' credit for the balance.

In view of the way the testimony about the indictment got into the case, and the contradictory testimony in relation to what occurred when the goods were sold, we do not think what was said in the argument, and the refusal to give the eighteenth request, constitute reversible error.

It is strenuously argued that the court erred in certain portions of his charge to the jury. The charge was somewhat long. It covered every phase of the case. The theories of the litigants were fairly and clearly stated. If any criticisms of the portions of the charge to which counsel call attention have any basis when considered separately, when the entire

charge is read the basis for the criticism disappears. We do not think it necessary to call attention to the other assignments of error. They have been considered.

Judgment is affirmed, with costs to the plaintiff.

KUHN, C. J., and STONE, OSTRANDER, BIRD, STEERE, BROOKE, and FELLOWS, JJ., concurred.