CONCETTA RUSSO ET AL. *v.* BENJAMIN DINERSTEIN

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued June 7—decided August 14, 1951

*Jacob Berman,* with whom was *Thomas J. Birmingham,* for the appellants (plaintiffs).

*Francis J. Moran,* with whom were *A. Moquet* and, on the brief, *J. E. McNerney,* for the appellee (defendant).

BROWN, C. J.   This is an action in negligence to recover damages consequent upon personal injuries sustained by two of the plaintiffs while riding as passengers in the defendant's automobile.   On March 9, 1949, the defendant owned a 1940 sedan.   At the

request of the plaintiff Nunzio, who is the husband of the plaintiff Concetta and the father of the plaintiff Rose-Ann, the defendant agreed to transport Concetta and Rose-Ann, then sixteen months old, from Colchester to Norwich. Concetta sat on the right side of the rear seat with Rose-Ann in her lap, and the little girl's six-year-old brother sat on the right side of the front seat beside the defendant. Both right-hand doors were closed and locked by the defendant on the inside by means of push-button locks. After proceeding a short distance, the defendant stopped briefly at a schoolhouse, where a relative of the plaintiffs came over to the car to greet them. Both doors on the right side were opened at that time. The rear door was then slammed shut at the defendant's direction, and he immediately drove off without ascertaining whether it was properly and completely closed and locked. To adequately secure the door in a closed position, it was essential that the double latch thereon be engaged. When only the first latch was utilized, a space of about a quarter of an inch remained between the edge of the door and the jamb. After the car left the school, Concetta placed Rose-Ann in a standing position between her knees. As the car proceeded, the right rear door, which was hinged at the rear, suddenly flew open, Rose-Ann fell out, suffering complete severance of her right arm above the elbow, and Concetta, in a futile attempt to rescue Rose-Ann, also fell out and was severely injured.

Evidence of the foregoing facts stood uncontradicted. The defendant rested his case without offering any evidence. The plaintiffs Rose-Ann and Concetta claim damages for the personal injuries sustained and the plaintiff Nunzio for expenses incident to their care and for future loss of earnings by Rose-Ann during her minority. The jury rendered a verdict for the defend-

ant. The plaintiffs' appeal from the judgment is confined to a claimed error in the court's charge and in its ruling restricting comment by the plaintiffs' counsel in argument.

The plaintiffs, citing *Koskoff* v. *Goldman,* 86 Conn. 415, 420, 85 A. 588, requested the court to charge: "If you find that the sudden opening of the rear door through no fault of her own caused the plaintiff Concetta Russo to become suddenly frightened so that she thereby lost control of her child, then she is relieved of all responsibility for her child's injuries. The law is that 'an involuntary act resulting from sudden fright cannot be imputed to the actor as contributory negligence.'" This request involves two propositions of law: one, as to the effect of Concetta's involuntary act upon the determination of whether negligence of the defendant was the proximate cause of Rose-Ann's injury; and the other, as to the effect of that act upon the issue of Concetta's contributory negligence. The latter aspect of the request was adequately covered by the charge as given. This does not hold true concerning the former.

While the request was not as specifically phrased as it might have been to present the first proposition, it does state in substance that, if by reason of fright from the sudden opening of the door Concetta lost control of the child, "then she is relieved of all responsibility for her child's injuries." The words quoted could be material only as bearing upon the question whether Concetta's conduct could constitute an intervening or superseding agency breaking the causal connection between the negligence of the defendant involved in the door's flying open and the injury to Rose-Ann. The court fully instructed the jury as to the effect, as such an agency, of the "voluntary act of Concetta in permitting the child to get off her lap and onto the floor of

the car and from there to fall out of the door which opened." It made no reference, however, in discussing proximate cause, to the effect of an involuntary act by Concetta such as was referred to in the request. While her voluntary act might, as an intervening or supervening agency, preclude the causal connection essential to the defendant's liability, as was fully explained to the jury, the same would not necessarily hold true as to an involuntary or instinctive act by her resulting from sudden fright. This distinction was recognized in an early English decision, often referred to as the "squib case," where the defendant threw a lighted squib into a market house and it was knocked from one person to another in an effort by each in turn to prevent its injuring him, until it finally exploded and put out the plaintiff's eye. The court held that the plaintiff could recover from the defendant. *Scott* v. *Shepherd,* 2 W. Bl. 892, 96 Eng. Rep. 525, 3 Wils. 403, 95 Eng. Rep. 1124. Among many authorities which have adopted and approved this principle are: *Ricker* v. *Freeman,* 50 N. H. 420, 432; *Ogden* v. *Aspinwall,* 220 Mass. 100, 104, 107 N. E. 448; *Davis* v. *Paducah Ry. & Light Co.,* 113 Ky. 267, 272, 68 S. W. 140; *Fort Worth* v. *Patterson* (Tex. Civ. App.) 196 S. W. 251, 253; Harper, Law of Torts, p. 276, § 125; note, 35 A. L. R. 1447; 45 C. J. 933 n. 66; 65 C. J. S. 696; 38 Am. Jur. 736, § 77; Restatement, 2 Torts §§ 444, 445, 447 (c); see *Wisotsky* v. *Frankel,* 165 N. Y. S. 243, 245; *Collins* v. *West Jersey Express Co.,* 72 N. J. L. 231, 232, 62 A. 675; *Lombardi* v. *Wallad,* 98 Conn. 510, 515, 120 A. 291.

The defendant contends, however, that upon the claims of proof the plaintiffs were not entitled to a charge upon this issue. The claims may be thus summarized: Rose-Ann was standing between her mother's knees when the door suddenly flew open; the strong wind caught the front of the door and caused it to fly

back so violently that the brace which normally prevented its swinging back beyond a right angle was broken; as the door flew open and swung violently back and forth, the child fell through the open space, sustaining the severance of her right arm; when the door flew open Concetta was frightened, screamed "My baby, baby!" and made a desperate effort to rescue her child. In so doing she too fell out of the car and was severely injured. The only reasonable interpretation of the claims is that the mother's fright and her instinctive clutching to save her child, followed by the precipitation of both to the roadway, were almost coincident and instantaneous. These claims of proof might in the minds of the jury suffice to support the supposition that the child, from her position between Concetta's knees, moved out and through the open doorway in consequence of Concetta's instinctive reaction in response to her sudden fright. The plaintiffs were entitled to a proper instruction to the effect that, if Concetta lost control of the child in consequence of her involuntary act due to fright, she would not be prevented for this reason from recovering damages predicated upon Rose-Ann's injury.

The defendant was present in court during the whole trial and no explanation was given for his failure to testify. In the course of his argument counsel for the plaintiffs attempted to comment on the fact that the defendant failed to take the witness stand and testify under oath regarding the position and actions of the boy in the front seat when the door flew open, there being a conflict between the defendant's self-serving statement to the state police officer and the testimony of the plaintiff Concetta. The argument of plaintiffs' counsel was interrupted by objection by the defendant's counsel, the objection was sustained by the court, and plaintiffs' counsel was forbidden to draw and argue

to the jury any unfavorable inference arising from the failure of the defendant to testify. Before the counsel for the plaintiffs resumed his argument, the court instructed the jury that they were not to draw any adverse inference from the failure of the defendant to offer any evidence. During his closing argument to the jury, plaintiffs' counsel again proceeded to comment on the failure of the defendant to testify under oath. The defendant objected, and the plaintiffs' counsel was immediately stopped and admonished by the court.

Whether these rulings were erroneous is the remaining question for determination. Since the jury could have inferred that if the boy was reaching over the back of the seat, as set forth in the defendant's statement, his hand may have come in contact with the push-button control in such manner as to release the door, the question whether the inference claimed by the plaintiffs was permissible was important. The controlling rule is: "It [the rule as to the inference] is not applicable until the plaintiff has first made out a prima facie case. The inference drawn from the failure to testify does not supply the place of evidence of material facts and does not shift the burden of proof so as to relieve the party upon whom it rests of the necessity of establishing a prima facie case, although it may turn the scale when the evidence is closely balanced." *Middletown Trust Co.* v. *Bregman,* 118 Conn. 651, 657, 174 A. 67. Or, to state it affirmatively, when a prima facie case is made out, then there comes into full operation the maxim cited in *Cupo* v. *Royal Ins. Co.,* 101 Conn. 586, 592, 126 A. 844, that all evidence is to be weighed according to the proof that it was in the power of one side to have produced, and in the power of the other to have contradicted. *DeMarey* v. *Brugas,* 103 Conn. 667, 670, 131 A. 392. We recently thus referred

to the potential value of the inference when permissible: "Furthermore, as the findings sufficed to make out a prima facie case in the essential particulars, the failure of the defendant to call [his employee] as a witness served to fortify the plaintiff's case, since he was available and was the one whom the defendant would naturally produce." *Lemmon* v. *Paterson Construction Co.,* 137 Conn. 158, 163, 75 A. 2d 385. Nor does the fact that the plaintiffs had laid in the defendant's statement deprive them of the benefit of the rule. See *Buell* v. *Siderman,* 197 Mich. 126, 130, 163 N. W. 881. The plaintiffs' claims of proof are sufficient to show that they had made out a prima facie case, at least as to the negligence of the defendant in failing to make certain that the door was securely fastened before he started to drive away from the school. The court's rulings complained of were erroneous.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.