# FLORA SMITH *v.* TOWN OF GREENWICH ET AL.*
## (SC 17555)

Sullivan, C. J., and Borden, Katz, Palmer and Vertefeuille, Js.

* The listing of justices reflects their seniority status on this court as of the date of argument.

Argued January 6—officially released June 6, 2006

*Joseph A. La Bella*, for the appellant (defendant 200 Greenwich Acquisition, LLC).

*Stewart M. Casper*, with whom were *Jeremy C. Virgil* and *Harold R. Burke*, for the appellee (plaintiff).

*Karen K. Clark*, with whom was *Frank G. Usseglio*, for the appellee (defendant Ronald R. Passerelli, Jr.).

*Opinion*

SULLIVAN, C. J. This appeal arises from an action brought by the plaintiff, Flora Smith, against the defendants, 200 Greenwich Acquisition, LLC (Greenwich Acquisition), 19 West Elm Street Associates, LLC (19 West Elm Street), the town of Greenwich (town), and Ronald R. Passerelli, Jr., in connection with injuries that the plaintiff suffered when she slipped and fell on an ice patch on the sidewalk in front of certain property

located in the town.[1] The plaintiff claimed, inter alia, that her injuries had resulted from negligence on the part of Greenwich Acquisition and 19 West Elm Street in maintaining the sidewalk. Following a jury trial, the court rendered judgment in favor of the plaintiff against Greenwich Acquisition only, from which Greenwich Acquisition appeals. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On December 30, 2000, a snowstorm deposited approximately thirteen inches of snow in the Greenwich area. In addition, it snowed less than one-half inch on both January 5 and January 9, 2001. On the morning of January 17, 2001, the plaintiff slipped and fell on a patch of ice on the sidewalk near the property line between Greenwich Acquisition's property and 19 West Elm Street's property, severely fracturing her ankle. The town owned the sidewalk where the plaintiff fell. The ice had formed next to a pile of snow that lay on a planting bed located on Greenwich Acquisition's property that was perpendicular to the sidewalk, as well as on the sidewalk abutting the bed. Warmer temperatures partially had melted the snow on the previous day, and ice had formed from the meltwater on the sidewalk adjacent to the snow pile between 4 a.m. and 7 a.m. on January 17, 2001.

Upon discovering the injured plaintiff, Joseph Voisene, the building manager for Greenwich Acquisition, called 911. A Greenwich police officer, John Thorme, arrived to care for the plaintiff and to conduct an investigation. At the time of the investigation,

---

[1] Prior to trial, the plaintiff withdrew her complaint against the town and Passerelli. After a trial on the plaintiff's claims against Greenwich Acquisition and 19 West Elm Street, the jury returned a verdict against Greenwich Acquisition and in favor of 19 West Elm Street. Greenwich Acquisition appealed to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

Thorme did not know the exact location of the boundary line between Greenwich Acquisition's property and 19 West Elm Street's property. Shortly after the accident, Voisene called Passerelli, Greenwich Acquisition's snow removal contractor, and asked him to remove the portion of the snow located on the sidewalk next to where the plaintiff had fallen.

The plaintiff filed a complaint against the town, Greenwich Acquisition and 19 West Elm Street. Greenwich Acquisition then filed an apportionment complaint against Passerelli claiming, inter alia, that, to the extent that the plaintiff had been injured as alleged, Passerelli had caused the injuries through his negligence. In her initial complaint, the plaintiff's only allegation against Greenwich Acquisition was that it negligently had failed to maintain the sidewalk. Greenwich Acquisition filed a motion for summary judgment, claiming that it had no legal duty to maintain the public sidewalk. The plaintiff subsequently filed, and the court granted, a request for leave to amend the complaint, seeking to add claims that Greenwich Acquisition had created a dangerous condition and a nuisance by piling snow at the base of its driveway adjoining the public sidewalk so that the runoff from melting snow created an ice slipping hazard. The plaintiff also amended her complaint pursuant to General Statutes § 52-102b (d),[2] to assert a direct claim of negligence against Passerelli. The trial court subsequently denied Greenwich Acquisition's motion for summary judgment, finding that genuine issues of material fact were in dispute. During jury selection, the plaintiff withdrew her claims against the town and Passerelli, leaving Greenwich Acquisition and 19 West

[2] General Statutes § 52-102b (d) provides: "Notwithstanding any applicable statute of limitation or repose, the plaintiff may, within sixty days of the return date of the apportionment complaint served pursuant to subsection (a) of this section, assert any claim against the apportionment defendant arising out of the transaction or occurrence that is the subject matter of the original complaint."

Elm Street as the only direct defendants, although Passerelli remained as an apportionment defendant.

On the first day of trial, the trial court denied a motion in limine by Passerelli seeking to preclude evidence concerning the apportionment complaint. Passerelli argued that under *Gazo* v. *Stamford*, 255 Conn. 245, 257–58, 765 A.2d 505 (2001), a property owner could not name a snow removal contractor as an apportionment defendant under the circumstances of this case. The trial court declined to rule on the motion at that time. Later in the trial, however, the trial court, sua sponte, granted Passerelli's motion for summary judgment on the basis of its interpretation of *Gazo*. The court subsequently submitted the case to the jury on the theories of negligence and nuisance only. The jury returned a verdict in favor of the plaintiff against Greenwich Acquisition and found no fault on the part of 19 West Elm Street. It assessed 70 percent negligence to Greenwich Acquisition, and 30 percent to the plaintiff. Subsequently, the trial court denied Greenwich Acquisition's motions to set aside the verdict, to determine collateral source reduction, and for remittitur. The trial court rendered judgment in favor of the plaintiff, and this appeal followed. Additional facts and procedural history will be set forth as necessary.

On appeal, Greenwich Acquisition claims that the trial court improperly: (1) declined to instruct the jury that, for Greenwich Acquisition to be liable for the accumulation of ice on the public sidewalk, the plaintiff needed to prove that Greenwich Acquisition's positive act altered the natural flow of water from its property; (2) declined to direct a verdict in its favor when the evidence was insufficient to establish that the ice on the sidewalk did not result from a natural accumulation of snow and the natural flow of water from Greenwich Acquisition's property; (3) allowed the plaintiff to introduce evidence that Greenwich Acquisition, through its

snow removal contractor, Passerelli, had performed subsequent remedial measures by removing snow from the sidewalk after the plaintiff's fall; (4) declined to instruct the jury that evidence regarding Passerelli's removal of snow from the sidewalk after the incident was not relevant to the issue of whether Greenwich Acquisition was negligent; (5) rendered summary judgment in favor of Passerelli, on the ground that, as a matter of law, a property owner may not assert an apportionment claim against a snow removal contractor; and (6) denied Greenwich Acquisition's motion for summary judgment where Greenwich Acquisition argues that it did not owe a duty to the plaintiff to maintain the public sidewalk, because the applicable ordinance failed to transfer the town's liability to Greenwich Acquisition. We reject these claims, and, accordingly, affirm the judgment of the trial court.

I

We first address Greenwich Acquisition's claim that the trial court improperly declined to instruct the jury that, for Greenwich Acquisition to be liable for the accumulation of ice on the public sidewalk, the plaintiff needed to prove that Greenwich Acquisition's positive act altered the natural flow of water from its property. We disagree.

The record reveals the following additional facts and procedural history. Greenwich Acquisition submitted a request to instruct the jury on the law as stated in *Young* v. *Talcott*, 114 Conn. 675, 678–79, 159 A. 881 (1932), and *Langlois* v. *Murphy*, 15 Conn. Sup. 137, 138 (1947). These cases state that a landowner whose property is next to a public sidewalk "is not liable for the formation of ice upon a public sidewalk due to the natural flow of surface water from [its] land. . . .

"[A] showing [is] required that the defendant so maintained [its] premises as to cause the water which flowed

from [its] premises to be diffused upon the sidewalk in a manner substantially different in volume or course than would naturally have been the case."[3] (Citation omitted.) *Langlois* v. *Murphy,* supra, 15 Conn. Sup. 138. The trial court stated: "I just don't think this whole thing of flow of water is relevant to this case," and did not include the instruction requested by Greenwich Acquisition in its charge to the jury. Instead, the trial court instructed the jury as follows: "An important principle of law in Connecticut, and this is really the key to understanding and deciding this case, is that an abutting landowner . . . [is] under no duty to keep the public sidewalk in front of [its] propert[y] in a reasonably safe condition for public travel.

"An abutting landowner . . . can be held liable, however, in either negligence or public nuisance for injuries resulting from the unsafe condition of a public sidewalk caused by the landowners' positive act. . . .

"By positive act, we mean taking affirmative steps to create the hazard that caused the accident and resulting injuries.

---

[3] See also *Wilson* v. *New Haven,* 213 Conn. 277, 280, 567 A.2d 829 (1989); *Young* v. *Talcott,* supra, 114 Conn. 678–79; *Hartford* v. *Talcott,* 48 Conn. 525, 532 (1881) ("The individual owes no duty to the public in reference to [a sidewalk abutting his property] except . . . to refrain from doing or placing anything thereon dangerous to the traveler. So far as defects in it result wholly from the operations of nature, the proprietor at whose front they exist is without responsibility for them."); *Calway* v. *Schaal & Son, Inc.,* 113 Conn. 586, 590, 155 A. 813 (1931) ("[i]f one by his acts creates a dangerous condition in a highway, or so conducts his own affairs that such a condition follows and he has notice of it, he is under a duty to use reasonable care to protect travelers from it; the liability for failure to do so does not arise out of the fact that the highway is defective but out of the duty resting upon him to guard persons subjected to danger by his act"); *Kane* v. *New Idea Realty Co.,* 104 Conn. 508, 515, 133 A. 686 (1926) (owners of property abutting highway have obligation to use reasonable care to keep premises in condition that will not endanger travelers in lawful use of highway); *Dunn* v. *J. P. Steven & Co.,* 192 F.2d 854, 855 (2d Cir. 1951) ("[i]f it should be proved at the trial that the defendant piled the snow in ridges on the walk . . . in a manner to make it more dangerous than in its natural

"The plaintiff alleges that the positive act in this case was the piling up of a mound of snow, which resulted in the later thaw and freeze cycle.

"Now, the opposite side of that coin is that if the accumulation of snow, the pile of snow in issue, was not created by the affirmative act of the defendant[s], but rather was a natural accumulation of snow, then the defendants cannot be held liable or responsible to the plaintiff."

Later, in explaining the concept of causation, the trial court stated that "[t]he test for cause in fact is simply would the accident or incident have occurred were it not for the defendants' conduct?

"The second component of legal cause is proximate cause. . . . The test of proximate cause is whether the defendants' conduct was a substantial factor in bringing about the plaintiff's fall and resulting injuries. . . .

"Your inquiry . . . is focused on the connection, if any, between the defendants' conduct and the plaintiff's fall. In order for a defendant to be held legally responsible for the plaintiff's accident, there must be a causal connection between [the two]. . . . It means that the negligence . . . must have entered into the production of such accident as a cause thereof."

The trial court also submitted special interrogatories to the jury asking the jury to determine, inter alia, whether the plaintiff had "prove[d] by a fair preponderance of the evidence that the defendants . . . acted negligently by mounding up the snow in a pile while in the course of snow removal as alleged in the complaint," and whether the plaintiff had "prove[d] by a fair preponderance of the evidence that . . . the negligence on the part of the defendants . . . was a proximate cause

state and that the conditions so created caused the plaintiff's fall, the defendant would incur liability").

of, that is, a substantial factor in causing the accident . . . and the plaintiff's injuries as alleged in her complaint."

Greenwich Acquisition now claims that it was improper for the court to refuse to instruct the jury that it could not find Greenwich Acquisition liable unless the plaintiff could show that Greenwich Acquisition's positive act altered the flow of water from its premises to the sidewalk. Although we agree with Greenwich Acquisition that it would have been better if the trial court had charged the jury in accordance with Greenwich Acquisition's request, we conclude that any impropriety was harmless.

"Our analysis begins with a well established standard of review. When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *DiStefano* v. *Milardo*, 276 Conn. 416, 421, 886 A.2d 415 (2005). "Failure to charge precisely as proposed by a defendant is not error where the point is fairly covered in the charge. . . . Instructions are adequate if they give the jury a clear understanding of the issues and proper guidance in determining those issues." (Internal quotation marks omitted.) *Craine* v. *Trinity College*, 259 Conn. 625, 662, 791 A.2d 518 (2002).

In the present case, Greenwich Acquisition claims that the trial court improperly refused to instruct the jury on the law as set forth in *Young* and *Langlois*. Under the reasoning of those cases, Greenwich Acquisition could not be held liable unless it "so maintained [its] premises as to cause the water which flowed from [its] premises to be diffused upon the sidewalk in a manner substantially different in volume or course than would naturally have been the case." *Langlois* v. *Murphy*, supra, 15 Conn. Sup. 138, citing *Young* v. *Talcott*, supra, 114 Conn. 679. The plaintiff counters that Greenwich Acquisition's reliance on *Langlois*, which, in turn, relied on *Young*, "is misplaced as the facts in *Young* presented an attenuated circumstance where snow and ice on the roof of a property owner's house melted and dripped upon an embankment also contained on the owner's property and then such melting then trickled onto the adjoining sidewalk where it froze. The court in *Young* distinguished the facts there from other cases with instructive similarities to the instant case, where the owner of property used it in such a fashion so as to render the adjoining highway unsafe." See *Young* v. *Talcott*, supra, 678, citing *Kane* v. *New Idea Realty Co.*, 104 Conn. 508, 515, 133 A. 686 (1926); *Calway* v. *Schaal & Son, Inc.*, 113 Conn. 586, 590, 155 A. 813 (1931). This amounts to an argument, however, that the evidence presented by the plaintiff would have *compelled* a reasonable jury to find that Greenwich Acquisition had used its property in such a way as to affect the flow of water from the planting bed and to render the sidewalk unsafe. In other words, the plaintiff effectively argues that she was entitled to a directed verdict on this specific question.[4] She made no such argument to the trial court, however, and the court concluded only

---

[4] Our review of the evidence does not support such a claim. The jury reasonably could have found that the flow of water from naturally existing snow on the planting bed would have been sufficient to create an ice patch even if Greenwich Acquisition had not piled snow on the bed.

that issues concerning the flow of water were not relevant to the case, not that there was insufficient evidence to support such an instruction. In the absence of any explanation for this conclusion or any argument by the plaintiff that the principles enunciated in *Young* and *Langlois* were inapplicable to the present case as a matter of law, we are constrained to agree with Greenwich Acquisition that the court improperly declined to instruct the jury that Greenwich Acquisition could not be held liable unless the plaintiff could show that Greenwich Acquisition's positive act altered the natural flow of water from its property.

This does not end our inquiry, however. We have repeatedly recognized that "[i]t is axiomatic . . . that not every error is harmful. . . . [W]e have often stated that before a party is entitled to a new trial . . . he or she has the burden of demonstrating that the error was harmful. . . . An instructional impropriety is harmful if it is likely that it affected the verdict." (Citation omitted; internal quotation marks omitted.) *Scanlon* v. *Connecticut Light & Power Co.*, 258 Conn. 436, 448, 782 A.2d 87 (2001). In determining whether an instructional impropriety was harmless, we consider "not only the nature of the error, including its natural and probable effect on a party's ability to place his full case before the jury, but the likelihood of actual prejudice as reflected in the individual trial record, taking into account (1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled." (Internal quotation marks omitted.) *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 244, 828 A.2d 64 (2003).

The trial court instructed the jury in the present case that it could hold Greenwich Acquisition liable only for "injuries resulting from the unsafe condition of a public sidewalk *caused by the landowner's positive act.* . . .

By positive act, we mean taking *affirmative steps to create the hazard that caused the accident and resulting injuries.*" (Emphasis added.) It further instructed the jury that it must determine whether the accident would have occurred were it not for the defendants' conduct and that, in order for Greenwich Acquisition to be held legally responsible for the plaintiff's injuries, there must be a connection between Greenwich Acquisition's conduct and the accident. Finally, the court submitted special interrogatories to the jury requiring the jury to determine, first, whether the defendants had negligently mounded the snow in a pile and, second, whether this negligent conduct was a substantial factor in causing the plaintiff's injuries. We conclude that, applying these instructions, the jury could have found Greenwich Acquisition liable *only* if it found that the cause of the plaintiff's injuries, namely the ice patch on the sidewalk, was caused by Greenwich Acquisition's negligent conduct in mounding the snow in a pile. Accordingly, we conclude that it is not reasonably probable that the jury was misled by the trial court's instructions and that the court's failure to instruct the jury in accordance with Greenwich Acquisition's request was harmless.

## II

We next address Greenwich Acquisition's claim that the trial court improperly declined to direct a verdict in its favor because the plaintiff's evidence was insufficient to establish that the ice on the sidewalk did not result from a natural accumulation of snow and flow of water from Greenwich Acquisition's property. We disagree.

"We begin with the well established and rigorous standard for reviewing sufficiency of evidence claims. . . . We must consider the evidence, including reasonable inferences which may be drawn therefrom, in the

light most favorable to the parties who were successful at trial . . . giving particular weight to the concurrence of the judgments of the judge and the jury, who saw the witnesses and heard the testimony . . . . The verdict will be set aside and judgment directed only if we find that the jury could not reasonably and legally have reached their conclusion. . . . We apply this familiar and deferential scope of review, however, in light of the equally familiar principle that the plaintiff[s] must produce sufficient evidence to remove the jury's function of examining inferences and finding facts from the realm of speculation." (Internal quotation marks omitted.) *Margolin* v. *Kleban & Samor, P.C.*, 275 Conn. 765, 773–74, 882 A.2d 653 (2005). "If the jury, without conjecture, could not have found a required element of the cause of action, it cannot withstand a motion to set aside the verdict." (Internal quotation marks omitted.) *Glazer* v. *Dress Barn, Inc.*, 274 Conn. 33, 50, 873 A.2d 929 (2005).

As we have indicated, absent a specific statute or ordinance to the contrary, owners of land abutting public sidewalks are not liable for negligence to those who are injured while walking on the sidewalks as a result of natural accumulations of snow and ice. Abutting landowners may be held liable, however, if they act to change the volume or the course of the watery melt that refreezes to create the dangerous condition that results in injury. Thus, the plaintiff's burden at trial was to present evidence from which the jury reasonably could conclude that Greenwich Acquisition positively had acted to create the snow pile that subsequently formed the ice patch, and that the resulting snow pile made the sidewalk more dangerous by contributing a materially different flow or volume of water than would have existed had Greenwich Acquisition not acted. We conclude that the jury reasonably could have found that the plaintiff satisfied this burden.

Greenwich Acquisition claims that there was no evidence from which the jury reasonably could have concluded that it had piled the snow next to the ice patch on which the plaintiff slipped, or that Greenwich Acquisition in any way had acted to cause the flow of water from its property to vary substantially in its volume or course from its natural state, so as to form the ice patch. It points out that none of the witnesses testified that the snow pile was not a result of natural accumulation, and notes that the plaintiff's expert, Robert Maxon, a meteorologist, conceded that it was impossible for him to determine whether the snow shown in the photographs was the result of natural accumulation. Greenwich Acquisition cites *Novak* v. *Anderson*, 178 Conn. 506, 508, 423 A.2d 147 (1979), in support of its claim that, although the jury was free to accept or reject testimony by Maxon, Thorme, Voisene, and Passerelli about the origin of the snow pile, even if it disbelieved the testimony of all the witnesses, this disbelief would not form the basis for concluding that Greenwich Acquisition had created the pile.

We address first the evidence supporting the plaintiff's claim that Greenwich Acquisition positively acted to create the snow pile that subsequently led to the ice patch upon which the plaintiff slipped. Maxon testified at trial that approximately thirteen inches of snow had fallen eighteen days before the plaintiff's accident, and approximately one inch of snow had fallen eight to twelve days prior to the accident. Although the issue initially was disputed by Greenwich Acquisition and 19 West Elm Street, the jury saw and heard evidence that the snow pile was located on property owned exclusively by Greenwich Acquisition. The jury, viewing the photographs of the ice, the snow pile and the planting bed, could compare those areas to other areas around the accident site to determine whether the pile on the sidewalk and the resulting ice looked natural, or

whether the pile appeared uneven, larger than other accumulated snow piles in the area, or in any way to have been created by human action. Using those same photographs, the jury had the opportunity to compare the appearance of the snow pile next to the planting bed with the appearance of the snow on the planting bed to determine whether the pile on the sidewalk looked as if it had accumulated naturally, or been piled. In addition, the jury heard testimony and saw photographic evidence that Greenwich Acquisition's building manager, Voisene, had called Passerelli shortly after the accident to ask him to clear the walkway of snow and ice. The jury reasonably could have inferred from this evidence that Greenwich Acquisition, through Passerelli, was in control of the area where the snow pile existed, that it had created the snow pile, and that the accumulation of snow on the planting bed would not have been so great if not for Greenwich Acquisition's actions. In light of our deferential scope of review of jury fact-finding, and recognizing that we may set aside a jury's verdict only if we find that the jury could not reasonably and legally have reached its conclusion, we conclude that the plaintiff produced sufficient evidence for the jury reasonably to infer that Greenwich Acquisition's positive act created the snow pile.

We next consider the evidence supporting the plaintiff's claim that Greenwich Acquisition, by creating the snow pile, caused a materially different flow or volume of water that formed the ice patch. Maxon examined thermal data to conclude that the three foot by eight foot ice patch formed when the snow pile started to melt on the previous day, and then refroze overnight. Thorme testified that his investigation led him to conclude that the snow pile, approximately four feet by three feet by six inches high, created the ice patch on which the plaintiff fell. As we concluded previously, the jury reasonably could have determined that Greenwich

Acquisition had piled snow in the area and, thus, reasonably could have determined that there was more snow in the area next to the planting bed than there would have been if Greenwich Acquisition had not acted. In addition, the jury saw photographic evidence of the area shortly after the accident, which showed the tapering of the ice and water runoff from the snow pile as it progressed across the sidewalk. The jury reasonably could have determined that the additional snow piled on the sidewalk led to increased water flow when the snow melted, which increased the size and dangerousness of the resulting ice patch. Again, in light of our deferential scope of review of jury fact-finding, and recognizing that we may set aside a jury's verdict only if we find that the jury reasonably and legally could not have reached its conclusion, we conclude that the plaintiff produced sufficient evidence for the jury reasonably to infer that Greenwich Acquisition, by creating the snow pile, caused a materially different and more dangerous condition than would have existed had Greenwich Acquisition not acted.

### III

We next address Greenwich Acquisition's claim that the trial court improperly allowed the plaintiff to introduce evidence that Greenwich Acquisition, through Passerelli, had performed subsequent remedial measures by removing snow from the sidewalk after the plaintiff's fall. We disagree.

The following additional procedural history is relevant to Greenwich Acquisition's claim. At trial, the plaintiff introduced as evidence a photograph of Passerelli clearing the snow pile, photographs of the area after the sidewalk had been treated with salt, and testimony from Voisene that he had called Passerelli after the accident. Greenwich Acquisition made a motion in limine to exclude any evidence that Passerelli had

cleared the sidewalk after the accident, and timely objected to the admission of each item of evidence on the ground that it constituted evidence of subsequent remedial measures. The plaintiff argued that the evidence was admissible because it was being offered to prove the issues of control of the premises and the feasibility of precautionary measures, and to show the source of the water that formed the black ice. See Conn. Code Evid. § 4-7 (a); *Rokus* v. *Bridgeport*, 191 Conn. 62, 66, 463 A.2d 252 (1983). The trial court agreed with the plaintiff, denied Greenwich Acquisition's motion, and admitted the evidence over Greenwich Acquisition's objections.

On appeal, Greenwich Acquisition cites § 4-7 (a) of the Connecticut Code of Evidence in support of its claim that evidence that a defendant has taken remedial measures subsequent to an accident " 'is inadmissible to prove negligence or culpable conduct in connection with the event.' " Greenwich Acquisition argues, on the basis of our holding in *Hall* v. *Burns*, 213 Conn. 446, 457–58, 569 A.2d 10 (1990), that such evidence is inadmissible because it has little probative value on the issue of a defendant's culpability, and because defendants will be less likely to correct hazardous situations if their conduct will be used against them at trial. Greenwich Acquisition further argues that the plaintiff's photographs of Passerelli cleaning up the snow pile and the icy sidewalk shortly after the plaintiff's accident showed the remediation in progress, had little or no probative value as to Greenwich Acquisition's culpability, fit no exception to the rule of exclusion, and "formed a pillar" of the plaintiff's argument that, if Passerelli removed the snow, he must have put it there in the first place.[5] The plaintiff counters: (1) the evidence of

---

[5] At trial, counsel for the plaintiff argued during his closing remarks that, "the question is who placed the snow pile there? . . . I believe [Passerelli] did it, and I think the evidence will tend to tip the scales in favor of [Passerelli] having done it, making [Greenwich Acquisition] responsible for what he did . . . . [H]e was the one [who] was called to remove the offending snow bank.

subsequent remedial measures was properly admitted under § 4-7 of the Connecticut Code of Evidence because it was " 'offered to prove controverted issues such as ownership, control or feasibility of precautionary measures' "; (2) Greenwich Acquisition has failed to identify, on appeal, the photographs to which it objects; (3) the photographs provided evidence of Greenwich Acquisition's control over the snow pile, which was a contested issue at trial; (4) the photographs were probative on the issue of the feasibility of precautionary measures and the importance of the pile in causing the hazardous condition; and (5) even if the court's decision to admit the photographs was improper, any impropriety on the part of the trial court in admitting them was harmless, because the jury already had learned through the unchallenged oral testimony of Voisene, Greenwich Acquisition's property manager, that he had contacted Passerelli shortly after the plaintiff had fallen. The plaintiff argues that the jury could have inferred from that exchange that the purpose for calling Passerelli was to request that he clean up the snow pile and treat the ice on the sidewalk. We agree with the plaintiff that the evidence was relevant to the issue of control.

"As a threshold matter, we set forth the standard by which we review the trial court's determinations concerning the [admissibility] of evidence. The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied

... [T]he [photographic exhibits] show [Passerelli] coming to remove that snow. If you didn't put it there, why in the world would you call your contractor to come remove it?"

the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Hayes* v. *Decker*, 263 Conn. 677, 683, 822 A.2d 228 (2003). "Even when a trial court's evidentiary ruling is deemed to be improper, we must determine whether that ruling was so harmful as to require a new trial. . . . In other words, an evidentiary ruling will result in a new trial only if the ruling was both wrong and harmful. . . . Finally, the standard in a civil case for determining whether an improper ruling was harmful is whether the . . . ruling [likely] would [have] affect[ed] the result." (Internal quotation marks omitted.) *Daley* v. *McClintock*, 267 Conn. 399, 403, 838 A.2d 972 (2004).

"The general rule is that evidence of subsequent repair is not admissible on the issue of negligence. . . . This court, however, has admitted evidence of subsequent remedial measures if offered for other purposes . . . ." (Internal quotation marks omitted.) *Hall* v. *Burns*, supra, 213 Conn. 456. "[T]he rule barring evidence of subsequent repairs in negligence actions is based on narrow public policy grounds, not on an evidentiary infirmity. . . . It presupposes that to admit evidence of subsequent repairs to an identified hazardous condition as proof of negligence penalizes the defendant for taking remedial measures. This discourages alleged tortfeasors from repairing hazards, thereby perpetuating the danger. This policy fosters the public good by allowing tortfeasors to repair hazards without fear of having the repair used as proof of negligence . . . .

"Even in negligence actions, however, we have held proof of subsequent remedial measures admissible if offered for a purpose other than to show culpable conduct on the part of a defendant. In several cases, we have admitted such evidence when the defendant's control of the hazardous instrumentality is at issue in the suit. See, e.g., *Williams* v. *Milner Hotels Co.*, 130 Conn.

507, 510, 36 A.2d 20 (1944); *Killian* v. *Logan*, 115 Conn. 437, 439, 162 A. 30 (1932). . . . The existence of these exceptions to the general rule illustrates that the strength of the public policy supporting the rule is not so great as to demand the exclusion where there is a strong probative use for the evidence, as contrasted with the somewhat dubious legal relevance of subsequent repairs to the question of negligence itself." (Citations omitted; internal quotation marks omitted.) *Sanderson* v. *Steve Snyder Enterprises, Inc.*, 196 Conn. 134, 143–45, 491 A.2d 389 (1985).

"The central question is the plaintiff's purpose in introducing the evidence. The doctrine bars evidence of subsequent repairs when offered to prove negligence. It does not exclude such evidence when offered to prove some other material issue." *Rokus* v. *Bridgeport*, supra, 191 Conn. 66. While repairs made after an accident tend to prove that the party conducting them retains control over the area in question; *Killian* v. *Logan*, supra, 115 Conn. 439; if the defendant has admitted orally that it controlled the premises on which the injury occurred, no reference in testimony to subsequent repairs should be made. *Haffey* v. *Lemieux*, 154 Conn. 185, 192–93, 224 A.2d 551 (1966).

In the present case, we conclude that the trial court did not abuse its discretion in admitting the photographic evidence as probative on the issue of control over the snow pile. Although Greenwich Acquisition conceded at trial that the plaintiff fell on the sidewalk abutting its land, it did not concede that it was the party responsible, if any party was responsible, for creating the snow pile. Indeed, the trial court directed the jury to determine which of the defendants, Greenwich Acquisition or 19 West Elm Street, if either, was liable for creating the snow pile. Thus, the jury could have used photographs of Passerelli clearing the pile shortly after the accident as evidence that Greenwich Acquisi-

tion controlled the pile and caused the dangerous conditions on the sidewalk. Accordingly, we conclude that the trial court did not abuse its discretion in admitting the photographic evidence.

IV

We next address Greenwich Acquisition's claim that the trial court improperly declined to instruct the jury that evidence regarding Passerelli's removal of snow from the sidewalk after the incident was not relevant to the issue of whether Greenwich Acquisition was negligent. We disagree.

The principles governing our review of claims of improper jury instructions are set forth in part I of this opinion. The following additional procedural history is relevant to the resolution of this claim. As noted in part III of this opinion, Greenwich Acquisition made a motion in limine to exclude any evidence that Passerelli had cleared the sidewalk after the accident, and timely objected to the admission of testimony and photographs showing that Passerelli had cleared the ice and snow pile after the plaintiff's accident on the ground that they constituted evidence of subsequent remedial measures. The court denied Greenwich Acquisition's motion and overruled its subsequent objections. During closing arguments, the plaintiff's counsel told the jury that "the question is who placed the snow pile there? And . . . I think the evidence will tend to tip the scales in favor of [Passerelli] having done it . . . . [H]e was the one [who] was called to remove the offending snow bank. . . . [T]he [photographic exhibits] show [Passerelli] coming to remove that snow. If you didn't put it there, why in the world would you call your contractor to come remove it?" Subsequent to closing arguments and prior to the jury's deliberation, Greenwich Acquisition took exception to the charge on the ground that the trial court "did not charge on subsequent remedial mea-

sures as not being a basis for an inference of negligence." Greenwich Acquisition noted that, although it had not requested a charge, the plaintiff's counsel, during closing arguments, had asked the jury to draw the inference that Passerelli had piled the snow because he was the one who had cleaned it up. Although the plaintiff had conceded on the first day of trial that the court would have to provide a limiting instruction concerning subsequent remedial measures, the plaintiff's counsel responded that the inference he intended for the jury to draw from the photographs of Passerelli cleaning up the snow and from his closing arguments, was that "it was [Passerelli's] snow that was placed there to begin with. It's essentially an argument of control . . . of that mound, whose was it. And so, it wasn't to argue for purposes of finding liability because he fixed something, but more of an argument based on control." The trial court overruled Greenwich Acquisition's exception to the charge as given.

On appeal, Greenwich Acquisition cites *Blanchard* v. *Bridgeport*, 190 Conn. 798, 805, 463 A.2d 553 (1983), in support of its claim that, having admitted evidence of a subsequent remedial measure, the trial court was required, upon exception, to provide the jury with a limiting instruction concerning the use of the evidence. The plaintiff claims that the issue is not preserved for appeal because, although Greenwich Acquisition took exception to the trial court's charge for failure to charge on subsequent remedial measures, it failed to state distinctly the nature of its complaint as required by Practice Book § 16-20.[6] The plaintiff argues that Greenwich Acquisition failed to specify the particular testimony,

[6] Practice Book § 16-20 provides in relevant part: "An appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of objection. . . ."

photographs, or combination of the two, to which it objected, and failed to state distinctly how the trial court should have addressed the matter. The plaintiff also notes that Greenwich Acquisition failed to object when Voisene testified at trial that he had called Passerelli shortly after the accident, and argues that the photographs merely serve to corroborate that testimony and to confirm the inference that Voisene had made the call so that Passerelli would clean up the sidewalk. The plaintiff further notes that Greenwich Acquisition's counsel elicited testimony from Passerelli that Voisene had called him after the plaintiff's fall, and requested that he "come out there and . . . clean up the snow that was there."

We first address the issue of preservation. "An appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the . . . exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of objection." Practice Book § 16-20. Greenwich Acquisition took exception immediately after the trial court delivered the charge on the ground that the trial court "did not charge on subsequent remedial measures as not being a basis for an inference of negligence." In the context of Greenwich Acquisition's prior, specific, and consistent objections, we conclude that this exception was sufficiently distinct to alert the trial court of any defects in the charge. See *State* v. *Ramos*, 271 Conn. 785, 801, 860 A.2d 249 (2004).

Accordingly, we address the merits of Greenwich Acquisition's claim. "Evidence admissible for one purpose but not for another may nevertheless be admitted. . . . The court should, however, caution the jury . . . about the limited purpose of the exhibit." (Citation omitted.) *Blanchard* v. *Bridgeport*, supra, 190 Conn. 805. "Although it is the better practice for the trial court

to instruct the jury whenever evidence is admitted for a limited purpose even when not requested to do so," a trial court's failure to do so does not constitute per se error. *Rokus* v. *Bridgeport*, supra, 191 Conn. 67.

We agree with Greenwich Acquisition that it would have been preferable had the trial court provided an instruction limiting the reasonable inferences the jury could draw from the evidence of Passerelli's subsequent remedial actions. The failure to do so in this case, however, was harmless. We are persuaded that the photographs and testimony to which Greenwich Acquisition objected merely corroborated Voisene's testimony that he had contacted Passerelli shortly after the accident. Thus, the jury reasonably could have drawn the same inferences from Voisene's testimony as they could have drawn from the photographs of Passerelli cleaning up the snow. We also note that the plaintiff did not argue to the jury that the photographs or testimony should be used as evidence of negligence, but rather as evidence of Greenwich Acquisition's control over the snow pile. Because the issue of control was clearly delineated during the trial, and the argument of counsel fairly presented the case; *Tough* v. *Ives*, 162 Conn. 274, 287, 294 A.2d 67 (1972); we conclude that any impropriety by the trial court in failing to instruct the jury as to the limited use of the evidence of subsequent remedial measures was harmless.

V

We next address Greenwich Acquisition's claim that the trial court improperly rendered summary judgment in favor of Passerelli, ruling as a matter of law that a property owner may not assert an apportionment claim against a snow removal contractor. We disagree.

As an initial matter, we set forth the appropriate standard of review. "[T]he standard of review of a trial court's decision to grant a motion for summary judg-

ment is well established. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Hanks* v. *Powder Ridge Restaurant Corp.*, 276 Conn. 314, 321, 885 A.2d 734 (2005). Whether the trial court properly concluded that, as a matter of law, no claim for apportionment could be brought against Passerelli is a pure question of law. Therefore, our review is plenary.[7]

The following additional facts and procedural history are relevant to the resolution of this claim. Greenwich Acquisition had retained Passerelli by oral agreement to perform snow removal services on Greenwich Acquisition's premises, including the adjacent public sidewalk. This agreement required Passerelli to clear snow and spread calcium chloride following snowstorms, or when Greenwich Acquisition notified him that his services were needed. Greenwich Acquisition and Passerelli disagreed over whether Passerelli had a duty under the contract to inspect the premises for snow and ice. After the plaintiff filed her original complaint against Greenwich Acquisition, 19 West Elm Street and the town, Greenwich Acquisition served an apportionment complaint on Passerelli pursuant to General Statutes

[7] This court has not yet received a written memorandum of decision or a signed transcript of the trial court's decision granting Passerelli's motion for summary judgment. The trial court's legal analysis is not essential to this court's consideration of the issue on appeal, however, where the issue is purely a question of law warranting plenary review. *See Niehaus* v. *Cowles Business Media, Inc.*, 263 Conn. 178, 182–83, 819 A.2d 765 (2003). Moreover, Greenwich Acquisition maintains that the trial court's reasoning is sufficiently set forth in the unsigned transcripts of the trial. See *Carrasquillo* v. *Carlson*, 90 Conn. App. 705, 708 n.2, 880 A.2d 904 (2005) (record adequate for review where unsigned transcript contains sufficiently detailed and concise statement of trial court's findings).

§§ 52-1026 and 52-572h (c).[8] Greenwich Acquisition alleged that, to the extent that the plaintiff suffered injuries in her fall, Passerelli directly and proximately caused such injuries by failing to maintain and inspect the sidewalk as required under contract and by negligently performing his duties. Passerelli filed a motion in limine to preclude all parties at trial from introducing evidence regarding the apportionment claim or the apportionment of liability between Greenwich Acquisition and himself, arguing that Connecticut law does not recognize such claims against independent contractors where the defendant has a nondelegable duty to maintain the premises in a reasonably safe condition. The trial court initially denied the motion. Later in the trial, however, the court raised the issue sua sponte and rendered summary judgment in favor of Passerelli, finding that, as a matter of law, under *Gazo* v. *Stamford*, supra, 255 Conn. 245, 257–58, no claim for apportionment could be brought against him. Passerelli did not participate in the remainder of the trial.

Greenwich Acquisition claims that the trial court improperly rendered summary judgment in favor of Passerelli. It argues that the court's ruling constituted a misinterpretation and unwarranted extension of this court's ruling in *Gazo*. The plaintiff and Passerelli argue that the trial court properly granted Passerelli's motion for summary judgment because: (1) Connecticut has recognized historically the nondelegable duty doctrine in premises liability cases; (2) Greenwich Acquisition owed the public a nondelegable duty to maintain its premises in reasonably safe condition, and thus its most

---

[8] General Statutes § 52-572h (c) provides in relevant part: "In a negligence action to recover damages resulting from personal injury, wrongful death or damage to property occurring on or after October 1, 1987, if the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for such party's proportionate share of the recoverable economic damages and the recoverable noneconomic damages . . . ."

appropriate remedy was not an apportionment claim against Passerelli, but rather a claim for indemnification; and (3) as set forth in *Gazo* v. *Stamford*, supra, 255 Conn. 257–58, the nondelegable duty doctrine and the relationship between property owners and independent contractors preclude defendant property owners from making apportionment claims against contractors for breaches of nondelegable duties.[9] We agree with the plaintiff and Passerelli.

"Prior to 1986, Connecticut tort law adhered to the common-law rule of joint and several liability for the allocation of responsibility for damages resulting from an injury caused by more than one person. . . . Under this doctrine, an injured person was entitled to recover the entire amount of a damages award from any defendant whose conduct proximately caused the injury." (Citation omitted.) *Nash* v. *Yap*, 247 Conn. 638, 644–45, 726 A.2d 92 (1999). Through various enactments known collectively as Tort Reform I and Tort Reform II, however, the legislature enacted our present apportionment statute, § 52-572h. Public Acts 1986, No. 86-338, § 3 (c); see *Nash* v. *Yap*, supra, 645. Section 52-572h (c) provides in relevant part that "[i]n a negligence action to recover damages resulting from personal injury . . . if the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for such party's proportionate share of the recoverable . . . damages . . . except as provided in subsection (g) of this section."

---

[9] The plaintiff also claimed in her brief to this court that the general verdict rule bars review of Greenwich Acquisition's claim because Greenwich Acquisition failed to submit special interrogatories requesting a factual determination distinguishing its conduct from Passerelli's. We disagree. In light of the trial court's ruling that Greenwich Acquisition could not apportion any liability to Passerelli in this case, there was no reason for Greenwich Acquisition to submit a request for such special interrogatories to the court.

In addition, we long have held that a property owner cannot escape liability for injury to a third party by hiring a contractor to inspect and maintain the property as conditions appear to demand, because the "negligence of the servant [is] the negligence of the [master] . . . ." *Koskoff* v. *Goldman*, 86 Conn. 415, 420, 85 A. 588 (1912). Landlords with tenants are "obligated to use reasonable care to keep those approaches reasonably safe . . . and . . . it is no defense that some one else is charged . . . with, or assumes the performance of, that duty, if it [is] not performed. . . . This obligation of the landlord extends also to all those who have lawful occasion to visit the tenants for social or business purposes." (Citations omitted.) *Reardon* v. *Shimelman*, 102 Conn. 383, 386, 128 A. 705 (1925); see also *Newell* v. *K. & D. Jewelry Co.*, 119 Conn. 332, 334, 176 A. 405 (1935) (when defendant store owner hired contractor to wash floors and contractor failed to dry them properly, causing injury to third party, court held that fact that independent contractor had caused condition complained of constituted no defense to defendant).

In *Gazo* v. *Stamford*, supra, 255 Conn. 245, we considered a claim very similar to the present case. In *Gazo*, the plaintiff had slipped and fallen on an icy and snowy sidewalk. Id., 247. The plaintiff brought a statutory highway defect claim against the city of Stamford and alleged that the record owner of the property abutting the sidewalk where the plaintiff had fallen (owner), and the tenant in possession (tenant) of the property abutting the sidewalk where the plaintiff had fallen, had failed in their duty to keep the sidewalk clear of ice and snow, causing his injuries. Id. The tenant, in turn, filed an apportionment complaint against the independent contractor (apportionment defendant), who had been hired by the tenant to maintain the property in a safe condition. The plaintiff subsequently filed a substitute complaint against the original defendants and the

apportionment defendant. Id. The apportionment defendant in *Gazo* moved, inter alia, for summary judgment on the apportionment complaint and on the negligence count that the plaintiff had raised in his substitute complaint, on the ground that he owed no duty of care to the plaintiff. Id., 248. The trial court granted the motion for summary judgment, concluding that the landlord's duty to keep the premises safe could not be delegated to a snow removal contractor. Id.

Because the tenant did not appeal from the judgment in favor of the apportionment defendant on the apportionment complaint, the propriety of that ruling was not before us. Id. Rather, we considered "the question of whether [the apportionment defendant] owe[d] a direct duty of care to the plaintiff based on [his] contractual relationship with [the tenant]." Id., 249. We concluded that the apportionment defendant did owe such a duty. Id., 250. As part of our reasoning, we stated that "[the apportionment defendant] contracted to perform ice and snow removal services for [the tenant], which had a nondelegable duty to keep its premises safe." Id., 253. The apportionment defendant argued, inter alia, that the nondelegable duty doctrine precluded the plaintiff from bringing an action against an independent contractor for its negligence because, under the doctrine, only the property possessor could be held liable for injuries sustained on the property. Id., 255. We agreed with the apportionment defendant that, under the nondelegable duty doctrine, the party with such a duty "may not absolve itself of liability by contracting out the performance of that duty. . . . [T]he nondelegable duty doctrine means that a party may contract out the performance of a nondelegable duty, but may not contract out his ultimate legal responsibility." Id.

We disagreed with the apportionment defendant in *Gazo*, however, that the independent contractor could not be held liable. We stated that "it is not a necessary

implication of the nondelegable duty doctrine that the contractor to whom the performance of the duty has been assigned may not, under appropriate circumstances, also owe the same duty to a party injured by its breach. . . . Instead, we view the nondelegable duty doctrine as involving a form of vicarious liability, pursuant to which the party with the duty may be vicariously liable for the conduct of its independent contractor. . . .

"Under the general rule, an employer is not liable for the negligence of its independent contractors. *Douglass* v. *Peck & Lines Co.*, 89 Conn. 622, 627, 95 A. 22 (1915); W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 71, p. 509; 41 Am. Jur. 2d, Independent Contractors § 29 (1995). One exception to this general rule, however, is that the owner or occupier of premises owes invitees a nondelegable duty to exercise ordinary care for the safety of such persons. . . . The nondelegable duty doctrine is, therefore, an exception to the rule that an employer may not be held liable for the torts of its independent contractors. See, e.g., *Petition of Alva S.S. Co., Ltd.*, [616 F.2d 605, 610 (2d Cir. 1980)] ([a]n independent contractor remains liable for his own negligence even though the law also imposes liability on the owner under the non-delegable duty rule); *Chapman* v. *Mutual Service Casualty Ins. Co.*, 35 F. Sup. 2d 699, 706 ([E.D. Wis.] 1999) (nondelegable duty doctrine is exception to independent contractor rule). Nondelegable duties create a form of vicarious liability. W. Prosser & W. Keeton, supra, § 71, p. 511; *Ray* v. *Schneider*, [16 Conn. App. 660, 664, 548 A.2d 461] (where the employer has a nondelegable duty . . . the employer may be vicariously liable to others for the negligent acts of the independent contractor) [cert. denied, 209 Conn. 822, 551 A.2d 756 (1988)]. In vicarious liability situations, the law has . . . broaden[ed] the liability for that fault by imposing it upon an *additional*, albeit innocent, defen-

dant . . . W. Prosser & W. Keeton, supra, § 69, p. 499; namely, the party that has the nondelegable duty." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Gazo* v. *Stamford*, supra, 255 Conn. 256–57.

We further concluded that "[o]ur analysis of [the apportionment defendant's] liability to the plaintiff is consistent with the abolition of joint and several liability by tort reform. [Section] 52-572h (c) provides: 'In a negligence action to recover damages resulting from personal injury, wrongful death or damage to property . . . if the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for his proportionate share of the recoverable . . . damages . . . .' This provision 'replaced the common-law rule of joint and several liability with a system of apportioned liability that holds each defendant liable for only his or her proportionate share of damages.' *Nash* v. *Yap*, [supra, 247 Conn. 645]. That provision, however, proceeds on the premise that the defendants, between or among any of whom liability is apportioned, are at least potentially liable in differing proportions. It does not apply, therefore, to a case of vicarious liability of one defendant for the conduct of another. Thus . . . § 52-572h (c) does not apply, for example, when the two defendants are a servant and his master who is vicariously liable for his servant's tortious conduct. Consequently, in the present case, if [the apportionment defendant] were to be held liable to the plaintiff based on his contractual assumption of [the tenant's] duty of care to the plaintiff, in effect [the tenant's] liability would be tantamount to a form of vicarious liability for [the apportionment defendant's] conduct. In that circumstance, there would be no revival of joint and several liability inconsistent with § 52-572h (c)." *Gazo* v. *Stamford*, supra, 255 Conn. 257–58.

In the present case, Greenwich Acquisition argues that the issue before this court, namely, the viability of an apportionment complaint by a property owner against its contractor, was not before us in *Gazo*, because in *Gazo*, the judge had rendered summary judgment on an apportionment complaint against the contractor, and the judgment was not appealed. Thus, Greenwich Acquisition claims, this court's discussion of the relationship between the nondelegable duty doctrine and vicarious liability was dicta and is not binding on this court. Regardless of whether the language in *Gazo* was dicta or was part of our holding, we now formally adopt the reasoning of that decision and conclude that the owner or occupier of a premises owes a nondelegable duty to keep the premises safe by protecting third persons from foreseeable slip and fall injuries. Should the owner or occupier of the premises hire a contractor to maintain the property, the owner or occupier is vicariously liable for the consequences arising from that contractor's tortious conduct. Section 52-572h (c) does not apply to cases of vicarious liability, like the present one, where defendants are not potentially liable to the plaintiff in differing proportions. We conclude, therefore, that in such circumstances, a defendant that owns or controls property may not bring an apportionment claim against a contractor hired to carry out the defendant's nondelegable duties.

In support of its claim, Greenwich Acquisition argues that the nondelegable duty doctrine, while recognized in various contexts in Connecticut, historically had little relationship to the duties of property owners. As we recognized in *Koskoff* v. *Goldman*, supra, 86 Conn. 420, and in our analysis in *Gazo* v. *Stamford*, supra, 255 Conn. 257–58, the party in control of a premises long has had a nondelegable duty to maintain the safety of those premises. We perceive no reason to reconsider this question.

Greenwich Acquisition also relies on *Henriques* v. *Magnavice*, 59 Conn. App. 333, 338, 757 A.2d 627 (2000), to support its claim that apportionment is consistent with the nondelegable duty doctrine. In *Henriques*, the Appellate Court stated that "[a]pportionment does not affect the determination of whether the defendant is liable under a theory of negligence but, rather, affects the determination of his degree of fault . . . ." Id. Greenwich Acquisition concedes that, "under the nondelegable duty doctrine, a property owner cannot avoid *liability* on the ground that it hired a competent contractor to discharge its duty." (Emphasis added.) It argues, however, that the nondelegable duty doctrine does not govern "the issue of whether the property owner's degree of *fault* must be identical to that of the contractor . . . ." (Emphasis added.) We recognize that the apportionment statute was intended to make a defendant's liability to the plaintiff proportionate to the defendant's degree of fault. The very essence of the nondelegable duty doctrine, however, is that the property owner is *fully liable* to a plaintiff who has been injured as a result of a breach of a nondelegable duty *regardless* of whether the property owner actually is at fault or the degree of fault. When a property owner's *liability* to the plaintiff for the wrongful conduct of an independent contractor legally cannot be apportioned, then there is no reason to apportion *fault* between the property owner and the contractor in an apportionment proceeding.[10]

---

[10] As we discuss later in this opinion, when one party is vicariously liable for another party's wrongful conduct, the innocent party may bring a claim for indemnity against the actual wrongdoer. We recognize that several jurisdictions have concluded that, when both parties to an indemnity proceeding are negligent, liability may be allocated between the plaintiff and the defendant according to the degree of fault. See, e.g., *Sehulster Tunnels* v. *Traylor Bros., Inc.*, 111 Cal. App. 4th 1328, 1350–51, 4 Cal. Rptr. 3d 665 (2003); *D'Ambrosio* v. *New York*, 55 N.Y.2d 454, 464, 435 N.E.2d 366, 450 N.Y.S.2d 149 (1982). To the extent that Greenwich Acquisition argues that fault may be allocated between it and Passcrelli in the present case, any such claim must be raised within the context of an indemnity proceeding.

Finally, Greenwich Acquisition argues that, in implementing tort reform, the legislature intended to impose " 'limitations on a negligent defendant's obligation to pay damages.' *Bhinder* v. *Sun Co.*, 246 Conn. 223, 232 [717 A.2d 202] (1998)." See also *Donner* v. *Kearse*, 234 Conn. 660, 668–69, 662 A.2d 1269 (1995). Greenwich Acquisition argues that the apportionment statute balances the plaintiff's interest in recovering her loss against the defendant's interest in limiting its payment by allowing the defendant to make direct claims against an apportionment defendant. Greenwich Acquisition argues that this balance of rights would be upset if the defendant could not bring an action against an apportionment defendant, whereas the plaintiff could bring an action against the property owner, the contractor, or both. In addition, Greenwich Acquisition argues that such a conclusion could lead to an increased burden on the courts because property owners would be forced to file separate actions against contractors when they previously would have brought apportionment actions within the context of the original litigation. We disagree.

It is widely recognized that, when one party is vicariously liable for another party's conduct, the appropriate remedy for an innocent party who has been held vicariously liable is a claim for indemnity rather than for apportionment. Restatement (Third), Torts, Apportionment of Liability § 13, comment (f), p. 115 (2000) ("a party held liable solely because of the tortious conduct of another may be entitled to indemnity from the latter"); 2 D. Pope, Connecticut Actions and Remedies, Tort Law (1993) § 25:30, p. 25-50 ("a right of indemnity may arise between master and servant, when the servant's negligent conduct has caused the master to become liable to a third party"); W. Prosser & W. Keeton, supra, § 51, p. 341–42 ("it is generally agreed that there may be indemnity in favor of one who is held responsible solely by imputation of law because of a

relation to the actual wrongdoer, as where an employer is vicariously liable for the tort of a servant or an independent contractor"). Greenwich Acquisition argued at oral argument that an indemnification action places a greater burden upon the defendant than an apportionment claim. See, e.g., *Kaplan* v. *Merberg Wrecking Corp.*, 152 Conn. 405, 407, 207 A.2d 732 (1965) (to recover as indemnitee, plaintiff must prove that defendant is primarily liable, which requires proof that [1] defendant was negligent, [2] defendant's negligence was direct, immediate cause of accident and resulting injury, [3] defendant was in control of situation to exclusion of plaintiff, and [4] plaintiff did not know of defendant's negligence, had no reason to anticipate it, and could reasonably rely on defendant not to be negligent). Even assuming that an indemnification action does place a greater burden on the defendant, requiring the defendant to bring such an action would not constitute an additional burden on the courts, because defendant property owners can assert third party claims for indemnification against contractors, thus enabling the indemnification claims to be tried in the same action as the plaintiff's original claims. See generally *Harvey* v. *Boehringer Ingelheim Corp.*, 52 Conn. App. 1, 724 A.2d 1143 (1999). Accordingly, we conclude that the trial court properly rendered summary judgment in favor of Passerelli.

## VI

We next address Greenwich Acquisition's claim that the trial court improperly denied its motion for summary judgment. Greenwich Acquisition argues that it did not owe a duty to the plaintiff to maintain the public sidewalk because the applicable town ordinance failed to transfer the town's liability to Greenwich Acquisition.

"The standard of review of a trial court's decision granting summary judgment is well established. Prac-

tice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Gould* v. *Mellick & Sexton*, 263 Conn. 140, 146, 819 A.2d 216 (2003). "[A]bsent exceptional circumstances, a denial of a motion for summary judgment is not appealable where a full trial on the merits produces a verdict against the moving party. . . . The basis of this policy is that even if the motion is improperly denied, the error is not reversible; the result has merged into the subsequent decision on the merits. To hold otherwise would be to depart from this sound policy which allows a decision based on more evidence to preclude review of a decision made on less evidence." (Citation omitted; internal quotation marks omitted.) *Gurliacci* v. *Mayer*, 218 Conn. 531, 541 n.7, 590 A.2d 914 (1991). "Cases in which appellate courts have reviewed such a denial typically have involved a judgment without a full trial on the merits. See, e.g., *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 295 n.12, 596 A.2d 414 (1991); *Zanoni* v. *Lynch*, 79 Conn. App. 325, 334, 830 A.2d 314, cert. denied, 266 Conn. 928, 837 A.2d 803 (2003)." *U.B. Vehicle Leasing, Inc.* v. *Davis*, 90 Conn. App. 206, 218, 876 A.2d 1222 (2005).

Greenwich Acquisition argues that it owed no duty to maintain the public sidewalk adjacent to its property,

because under common law, such maintenance was the municipality's responsibility. Thus, Greenwich Acquisition argues, because it filed a motion for summary judgment at a time when the plaintiff's only allegation against it was that it negligently had maintained the public sidewalk, the plaintiff had no other basis upon which to recover against Greenwich Acquisition, and the claim should have been dismissed summarily at that time.

In response to Greenwich Acquisition's motion for summary judgment, the plaintiff filed an amended complaint, alleging, in addition to its allegations that Greenwich Acquisition had failed to properly maintain the sidewalk, that Greenwich Acquisition "[i]n clearing snow from the driveway . . . piled the snow at the base of the driveway immediately adjoining the public sidewalk in a manner which it knew or should have known would cause run-off from melting snow resulting in a dangerous ice slipping hazard on the public sidewalk." The trial court subsequently denied Greenwich Acquisition's motion because it concluded that there were "unresolved fact issues relative to liability."

We will permit a party to appeal a denial of a motion for summary judgment after a full trial on the merits only in exceptional circumstances. After reviewing the record, we conclude that this case does not present an exceptional circumstance that would justify reviewing on appeal a denial of a motion for summary judgment where a trial was held on the merits. See *Gurliacci* v. *Mayer*, supra, 218 Conn. 541 n.7; *Bristol* v. *Vogelsonger*, 21 Conn. App. 600, 601 n.2, 575 A.2d 252 (1990); *Greengarden* v. *Kuhn*, 13 Conn. App. 550, 552, 537 A.2d 1043 (1988); see also *Denby* v. *Voloshin Cadillac, Inc.*, 3 Conn. App. 181, 181–82 n.3, 485 A.2d 1360, cert. dismissed, 196 Conn. 802, 491 A.2d 1105 (1985).

The judgment is affirmed.

In this opinion the other justices concurred.