******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

RICKY SOLA *v.* WAL-MART STORES, INC., ET AL.
(AC 35328)

Lavine, Prescott and West, Js.

*Argued May 19—officially released September 16, 2014*

(Appeal from Superior Court, judicial district of
Hartford, Scholl, J.)

*Gary J. Strickland*, for the appellant (plaintiff).

*Gary Hohenthal*, with whom, on the brief, was
*Amanda Carlson*, for the appellee (defendant Wal-Mart
Stores East I Limited Partnership).

*Opinion*

PRESCOTT, J. In this action arising from an alleged slip and fall at a Wal-Mart store, the plaintiff, Ricky Sola, appeals from the trial court's denial of his motion to set aside the jury's verdict in favor of the defendant Wal-Mart Stores East I Limited Partnership.[1] The plaintiff claims on appeal that, in crafting its jury instructions and interrogatories, the court misconstrued and misapplied the nondelegable duty doctrine and that those errors misled the jury as to the applicable law, thereby affecting the verdict. We agree with the plaintiff. Accordingly, we reverse the judgment of the trial court and remand the matter with direction to grant the motion to set aside the verdict and for a new trial.[2]

The following facts, which the jury reasonably could have found, and procedural history are relevant to our resolution of the issues on appeal. On October 1, 2008, shortly before closing time, the plaintiff went shopping for Halloween supplies at the Wal-Mart store (store) in Rocky Hill operated by the defendant.[3] He was accompanied by several individuals, including his minor children and his brother. At that time, the store was undergoing renovations, but remained open to customers.

The defendant had hired Zlotnick Construction as the general contractor to oversee the renovation project. Zlotnick Construction, in turn, had hired additional subcontractors to work on the project, including Horizon Services (Horizon). Horizon was tasked with cleaning and refinishing the store's floors, which included stripping off the old wax finish and applying a new coat of wax. A Horizon employee, Kevin Largie, was scheduled to work at the store on the night of October 1, 2008. Largie arrived at the store at approximately 9:30 p.m. and reported to the general contractor. The general contractor directed Largie to begin working on the floors in the seasonal products section of the store, which, at the time, housed the store's Halloween merchandise.

The stripping process involved applying a solution of floor stripper and water to the floor for approximately ten to fifteen minutes, after which time the old finish could be scraped up and removed. Largie began by testing the effectiveness of the stripping solution on a five or six foot section of floor near the end of one of several aisles in the seasonal product section (test area). Because the stripping solution caused the floor to be slippery where applied, Largie blocked off the test area with various equipment to prevent anyone from unknowingly entering the test area. After applying the stripping solution to the test area, Largie left the area for a few minutes, going into a nearby storage area. When he returned, the plaintiff, who had been shopping in the seasonal products section, informed

Largie that he had slipped and fallen in the test area, injuring himself. The assistant manager on duty was notified of the incident, and met with the plaintiff and his companions at the front of the store. An ambulance was called for the plaintiff.[4]

In June, 2010, the plaintiff commenced the present action. In the operative complaint, he alleged that, at the time of his fall, the section of floor where he fell was in an unsafe condition due to the presence of stripping solution or some other liquid, that the presence of the liquid on the floor caused him to fall and to injure himself, and that the defendant, through its agents, servants or employees, knew or should have known of the existence of the unsafe condition of the floor, but failed to remedy it or to adequately warn shoppers of the danger.[5] The defendant admitted in its answer to the complaint that it had a duty to exercise reasonable care in maintaining the store's floors for its customers, but denied all allegations in the complaint that it had acted negligently in exercising that duty. The defendant alleged by way of special defense that the plaintiff's own negligence was a substantial factor in causing his fall and injuries. The plaintiff denied all allegations in the special defense.

The matter was tried to a jury over three days. During the trial, the plaintiff filed a request to charge that included a proposed instruction regarding the nondelegable duty doctrine.[6] The proposed instruction provided that if the jury found that Horizon or its employees were negligent in failing to keep the floors in a reasonably safe condition, that negligence was fully chargeable to the defendant pursuant to the nondelegable duty doctrine.

The court did not adopt the plaintiff's proposed instruction with respect to the nondelegable duty doctrine, instead charging the jury as follows: "[The defendant] has what we call a nondelegable duty to maintain the safety of its . . . premises. This means that it owes a duty to exercise ordinary care to safely maintain the premises and while it may contract out the performance of that duty, it may not contract out its ultimate legal responsibility. In other words, [the defendant] is responsible for the damages to which [the plaintiff] may be entitled due to its negligence and it cannot escape liability for any such injury by claiming it had contracted with someone else to maintain the property in a reasonably safe condition."[7]

As a part of its instructions to the jury, the court also discussed the verdict form, which included a number of interrogatories drafted by the court. The court informed the jury that the interrogatories were "designed to help [the jury] go through the issues that need to be decided in order to reach [a] verdict." The court instructed the jury to "start from the beginning and go as far as you need to go and answer the questions in order." The court

explained that the first few interrogatories pertained to the issue of notice, and that if the jury were to find a lack of notice, this would require a verdict for the defendant. The court explained that this was because, as it had stated in its earlier instructions, "in order for the defendant to be liable it had to either have [had] actual or constructive notice of the dangerous condition of the floor where [the plaintiff] fell."[8] After deliberating, the jury returned a verdict for the defendant. In its answers to the interrogatories, the jury indicated that it did not find that the defendant had actual or constructive notice of the unsafe condition of the floor where the plaintiff fell. The jury did not answer the remaining interrogatories.

The plaintiff filed a timely motion to set aside the verdict pursuant to Practice Book § 16-35. He argued that the court's jury instructions, combined with the interrogatories, were misleading and incorrect as to the applicable law, and that the errors were harmful because they affected the verdict. More specifically, he argued that the court's instructions and interrogatories effectively mandated a verdict for the defendant unless the jury found that the defendant had actual or constructive notice of the condition of the test area, and that the jury was directed that it could impute actual notice to the defendant only if the jury found that the defendant itself actually knew of the unsafe condition of the floor, or it found that Horizon *had been acting as the defendant's agent* and had created the unsafe condition. According to the plaintiff, however, pursuant to the nondelegable duty doctrine, the jury also should have been instructed that if it found that Horizon, through its employee Largie, had acted negligently by creating an unsafe condition that caused the plaintiff's fall, Horizon's negligence was fully attributable to the defendant, regardless of whether Horizon had been acting as the defendant's agent or whether the defendant had actual or constructive notice of the unsafe condition. The plaintiff also argued that "the jury could not have reached any other conclusion but that Horizon was negligent," and thus the court's failure to instruct on vicarious liability under the nondelegable duty doctrine was harmful error because it eliminated a path to a plaintiff's verdict.

The defendant filed an objection to the motion to set aside the verdict. It argued that although the court had not adopted all of the plaintiff's proposed instructions, the court's jury charge and interrogatories were legally correct and properly reflected the issues before the jury. The defendant maintained that although it had a nondelegable duty to maintain the safety of its premises, the plaintiff, in order to recover from the defendant on a theory of premises liability, still had the burden of proving all necessary elements of a premises liability cause of action, including that the defendant had actual or constructive notice of the specific defect alleged to

have resulted in the plaintiff's injuries. The defendant also disputed the plaintiff's argument that the evidence clearly established Horizon's negligence. Moreover, the defendant contended that the jury's responses to the interrogatories finding that the defendant did not have actual or constructive notice of the condition of the floor were consistent with a finding of no dangerous condition, thus providing a basis for upholding the jury's verdict independent of any error in the jury instructions regarding the nondelegable duty doctrine.

The court heard arguments on the motion to set aside the verdict, following which it issued a written memorandum of decision denying the motion. The court concluded that its jury instructions properly set forth the law and disagreed with the plaintiff that the jury should have been instructed that the defendant could be found vicariously liable for the negligence of Horizon pursuant to the nondelegable duty doctrine. The court's reasoning was twofold. First, the court stated that the issue before the jury was not the negligence of Horizon, but the negligence of the defendant, indicating later in the memorandum of decision that the operative complaint "contain[ed] no reference to Horizon, or its employees . . . or that Horizon was negligent, and that, therefore, [the defendant] was liable for Horizon's negligence." Second, the court disagreed with the plaintiff's assertion that the nondelegable duty doctrine was "a means of imposing vicarious liability on a landowner for any negligent activity on its property by an independent contractor . . . ." But see *Smith* v. *Greenwich*, 278 Conn. 428, 458, 899 A.2d 563 (2006) ("[n]ondelegable duties create a form of vicarious liability"). This appeal followed.

Before turning to the merits of the plaintiff's claim, we briefly set forth the legal standard that governs our review of a trial court's denial of a motion to set aside a jury verdict. "The trial court possesses inherent power to set aside a jury verdict which, in the court's opinion, is against the law or the evidence. . . . [The court] should not set aside a verdict [if] it is apparent that there was some evidence upon which the jury might reasonably reach their conclusion, and should not refuse to set it aside [if] the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles . . . . Ultimately, [t]he decision to set aside a verdict entails the exercise of a broad legal discretion . . . that, in the absence of clear abuse, we shall not disturb." (Internal quotation marks omitted.) *Edmands* v. *CUNO, Inc.*, 277 Conn. 425, 452–53, 892 A.2d 938 (2006). With that standard in mind, we now turn to the plaintiff's claim.

The plaintiff claims that the court abused its discretion in denying his motion to set aside the verdict because its jury instructions and interrogatories misled

the jury to believe that it could hold the defendant liable only if the defendant had actual or constructive notice of the dangerous condition of the test area where the plaintiff allegedly fell. In particular, the plaintiff argues that the jury instructions and interrogatories failed to accurately address the nondelegable duty doctrine, and that if the jury had been instructed properly, it could have found the defendant vicariously liable for the negligence of Horizon, regardless of actual or constructive notice by the defendant of the condition of the test area. We begin our analysis by setting forth the law governing a property owner's liability to invitees for the actions of independent contractors and the nondelegable duty doctrine. We then turn to a consideration of the adequacy of the court's jury instructions and interrogatories, and whether they provided the jury with proper guidance to understand and to determine the issues before it. Because we determine that the court's instructions and interrogatories did not provide the jury proper guidance, we ultimately conclude that the court abused its discretion by denying the plaintiff's motion to set aside the verdict.

It is a well established general principle of tort law that an employer is not liable for the negligence of its independent contractor. See *Machado* v. *Hartford*, 292 Conn. 364, 371, 972 A.2d 724 (2009); 2 Restatement (Second), Torts § 409, p. 370 (1965); 41 Am. Jur. 2d, Independent Contractors § 27, p. 497 (2005). There are, however, many exceptions to that general rule.[9] One such exception arises from the nondelegable duty doctrine. *Gazo* v. *Stamford*, 255 Conn. 245, 257, 765 A.2d 505 (2001). "[T]he owner or occupier of premises owes invitees a nondelegable duty to exercise ordinary care for the safety of such persons." (Internal quotation marks omitted.) Id. "[T]he nondelegable duty doctrine means that [the employer] may contract out the performance of [its] nondelegable duty, but may not contract out [its] ultimate legal responsibility." (Emphasis omitted; internal quotation marks omitted.) *Machado* v. *Hartford*, supra, 371–72. In *Smith* v. *Greenwich*, supra, 278 Conn. 460, our Supreme Court stated that "the owner or occupier of a premises owes a nondelegable duty to keep the premises safe by protecting third persons from foreseeable slip and fall injuries. Should the owner or occupier of the premises hire a contractor to maintain the property, *the owner or occupier is vicariously liable for the consequences arising from that contractor's tortious conduct*." (Emphasis added.) In other words, the nondelegable duty doctrine creates a form of vicarious liability pursuant to which a property owner may be liable to an invitee for the negligence of its independent contractors or subcontractors in their performance of the employer's nondelegable duty, "regardless of whether the property owner actually is at fault or the degree of fault." (Emphasis omitted.) Id., 461. "In vicarious liability situations, the law has . . .

broaden[ed] the liability for that fault by imposing it upon an additional, albeit innocent, defendant; namely, the party that has the nondelegable duty." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Gazo* v. *Stamford*, supra, 257.[10] Thus, under these principles, even if a property owner has no actual or constructive knowledge of an unsafe condition on the property such that the property owner could not be held directly liable for injuries to an invitee caused by the unsafe condition, the property owner still may be held vicariously liable for any injuries to the invitee caused by the condition if it resulted from the negligent acts or omissions of an independent contractor hired to perform work on the property in furtherance of a property owner's nondelegable duty to keep its premises reasonably safe for invitees.

Our case law recognizing that a property owner may be held vicariously liable for the negligence of an independent contractor performing maintenance or repair work on the property is in accord with § 422 of the Restatement (Second) of Torts, which sets forth the following rule: "A possessor of land who entrusts the repair of a building or other structure thereon to an independent contractor is subject to the same liability to persons within or outside the land who are injured by the contractor's negligent failure to put or maintain the building or structure in reasonably safe condition *as though he had retained the making of the repairs in his own hands*." (Emphasis added.) 2 Restatement (Second), supra, § 422, p. 405.

Courts in other jurisdictions also have held that property owners may be vicariously liable to invitees for the negligence of an independent contractor or subcontractor performing repair work, viewing adoption of such a rule as an extension of a property owner's nondelegable duties to business invitees. See *Koepke* v. *Carter Hawley Hale Stores, Inc.*, 140 Ariz. 420, 423–24, 682 P.2d 425 (App. 1984), and cases cited therein (department store may be vicariously liable for invitee's injuries after tripping on chalk line stretched across aisle by employees of contractor during remodeling of store despite lack of evidence that store had notice of defect); see also *Bryant* v. *Sherm's Thunderbird Market*, 268 Or. 591, 600–602, 522 P.2d 1383 (1974) (store owner could be vicariously liable to invitee for injuries as result of negligence of independent contractor engaged in upgrading store fixtures).

Having set forth the applicable law, we now turn to an examination of the jury instructions and interrogatories provided by the court in the present matter.

We first consider the propriety of the court's jury instructions. In reviewing a challenge to jury instructions, "we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather

than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . Instructions are adequate if they give the jury a clear understanding of the issues and proper guidance in determining those issues." (Citation omitted; internal quotation marks omitted.) *Smith* v. *Greenwich*, supra, 278 Conn. 437.

In the present case, after the court set forth the essential elements of a negligence cause of action—duty, breach of duty, causation, and damages—and explained the duties owed by the defendant to the plaintiff as a business invitee, the court instructed the jury as follows: "Now, in order for [the plaintiff] to recover from [the defendant], he must also prove that [the defendant] had actual notice, that is, actually knew of the unsafe condition of the floor long enough before [the plaintiff's] injury to have taken steps to correct the condition or to take other suitable precautions. If the condition was one that was created by [the defendant] or one of its agents, then that constitutes actual notice. In this regard, you must determine whether the subcontractor working on the floor was [the defendant's] agent. An agent is someone who has been designated by another to act on its behalf and subject to its control. An agent is someone who is doing something at the behest and for the benefit of another. The three elements required to show the existence of an agency relationship here include (1) a manifestation by [the defendant] that the subcontractor will act for it; (2) acceptance by the subcontractor of the undertaking; and (3) an understanding between the parties that [the defendant] will be in control of the undertaking. If you find that the subcontractor working on the floor was [the defendant's] agent and that he created . . . the dangerous condition, then you must find that [the defendant] had actual notice of the condition. Now, if [the defendant] did not have actual notice . . . of the defect or the condition was not caused by it or its agent, it may still be liable if it had constructive notice of the defect. That means that [the defendant], using reasonable care, should have known of the unsafe condition in time to have taken steps to correct the condition or to take other suitable precautions. You may consider whether [the defendant] inspected the premises on a reasonable basis or on a reasonable way in determining whether it should have known of the unsafe condition. You may consider the length of time the condition had existed in determining whether [the defendant] should have known of the condition had it used reasonable care. In deciding the issue

of notice, the subsidiary question is whether the defect had existed for such a length of time that [the defendant], in the exercise of due care, should have discovered it in time to have remedied it prior to [the plaintiff's] fall. Which constitutes a reasonable time is a question of fact for you to determine based on the circumstances you find to have existed in this case."

Before turning to its instructions regarding the element of causation, the court interjected its instruction regarding the nondelegable duty doctrine, stating: "[The defendant] has what we call a nondelegable duty to maintain the safety of its . . . premises. This means that it owes a duty to exercise ordinary care to safely maintain the premises, and while it may contract out the performance of that duty, it may not contract out its ultimate legal responsibility. In other words, [the defendant] is responsible for the damages to which [the plaintiff] may be entitled due to its negligence, and it cannot escape liability for any such injury by claiming it had contracted with someone else to maintain the property in a reasonably safe condition." The court then finished the remainder of its instructions.[11]

Considering the entirety of the court's instructions, we agree with the plaintiff that they did not give the jury a clear understanding of the issues with respect to the nondelegable duty doctrine and its application to the facts of the present case. As a whole, the instructions given by the court were accurate to the extent that the case involved a determination of the direct liability of the defendant. This case, however, also involved the potential liability of the defendant stemming from the negligence of an independent contractor while performing repairs to property, thus implicating the defendant's nondelegable duty to ensure the safety of its premises. Despite instructing the jury that the defendant had a nondelegable duty to keep the premises reasonably safe, the court's instruction did not provide the jury with any guidance on how to interpret or to apply that instruction, especially in light of the immediately preceding instructions on notice and agency.

The court's instruction contained no reference to vicarious liability, although, as set out previously, that is the applicable law in this state if an independent contractor acts negligently in the performance of a property owner's nondelegable duty to reasonably maintain the safety of its property for invitees. See *Smith* v. *Greenwich*, supra, 278 Conn. 460. In contrast with the instruction requested by the plaintiff, the court's instruction did not inform the jury that, pursuant to the nondelegable duty doctrine, the jury could find the defendant liable to the plaintiff if it found that Horizon, through its employee, Largie, had acted negligently by failing to keep the test area reasonably safe, regardless of whether the jury also determined that Horizon was not the defendant's agent or that the defendant did

not have actual or constructive notice of the condition of the test area.

In its memorandum of decision denying the motion to set aside the verdict, the court reasoned that an instruction imposing vicarious liability on a landowner for an independent contractor's negligence in maintaining the safety of the landowner's property would "transform a landowner's duty to one of strict liability to someone injured on its premises." Contrary to the trial court's statement, proper application of the nondelegable duty doctrine does not mean that a property owner is liable for all injuries that might occur on its property. See *Hellamns* v. *Yale-New Haven Hospital, Inc.*, 147 Conn. App. 405, 410, 82 A.3d 677 (2013) (property owners not insurer of the safety of its invitees), cert. granted on other grounds, 311 Conn. 918, 85 A.3d 652 (2014). Instead, a property owner is liable only for an injury that is proven to have resulted from a negligent act of an independent contractor in the performance of a nondelegable duty. That is not strict liability.

The court also reasoned that the plaintiff was not entitled to recover on a theory of vicarious liability because "the plaintiff's cause of action was not pled as a vicarious liability claim but as a premises liability claim." The court emphasized that the operative complaint lacks any specific references to Horizon or its employees, and does not allege that Horizon was negligent or that the defendant was liable for Horizon's negligence. We are not persuaded that, under the circumstances of this case, the lack of such allegations is fatal to the plaintiff's opportunity to recover under a theory of vicarious liability pursuant to the nondelegable duty doctrine.

Despite the lack of specific allegations in the complaint regarding Horizon, the nondelegable duty doctrine was a part of the case as it was presented and tried to the jury. Prior to the start of the trial, the court and the defendant had notice that one of the plaintiff's theories of recovery was that the nondelegable duty doctrine imposed liability on the defendant for the negligence of its independent contractor. That theory was stated in the plaintiff's motion in limine filed prior to the trial; see footnote 6 of this opinion; and was included as part of the plaintiff's request to charge on the nondelegable duty doctrine. The plaintiff presented evidence at trial from which the jury reasonably could have found that Horizon, through Largie, was negligent in applying stripping solution to the test area and then leaving the area unguarded without properly warning customers of the potential slip and fall hazard it had created. Indeed, the fact that the court actually gave a nondelegable duty instruction to the jury is compelling evidence that all participants, including the court, understood that the doctrine had been raised in the case and must be applied to the facts as pleaded. Significantly, the

defendant did not object to the court giving a nondelegable duty instruction. Because the nondelegable duty doctrine was part of the case before the jury, the court was required to accurately instruct the jury in accordance with the law. In sum, the jury instructions given by the court were incomplete and failed to accurately present the case to the jury under established law because the jury was unaware it could consider whether the defendant was liable for the negligent actions of Horizon and its employees regardless of any actual or constructive notice of the unsafe condition.

Furthermore, any deficiencies in the instructions were compounded by the interrogatories and attendant instructions included on the verdict form. "The power of the trial court to submit proper interrogatories to the jury, to be answered when returning [its] verdict, does not depend upon the consent of the parties or the authority of statute law. In the absence of any mandatory enactment, it is within the reasonable discretion of the presiding judge to require or to refuse to require the jury to answer pertinent interrogatories, as the proper administration of justice may require. . . . The trial court has broad discretion to regulate the manner in which interrogatories are presented to the jury, as well as their form and content. . . . Moreover, [i]n order to establish reversible error, the defendant must prove both an abuse of discretion and a harm that resulted from such abuse. (Citation omitted; internal quotation marks omitted.) *Earlington* v. *Anastasi*, 293 Conn. 194, 200, 976 A.2d 689 (2009).

Here, the court instructed the jury that the interrogatories were intended to guide it in reaching a verdict, and the court asked the jury to answer the interrogatories in the order that they were presented. "[W]hen a jury has received an instruction, it is presumed to have followed such instruction unless the contrary appears." (Internal quotation marks omitted.) *Stratek Plastic Ltd.* v. *Ibar*, 145 Conn. App. 414, 419, 74 A.3d 577, cert. denied, 310 Conn. 937, 79 A.3d 890 (2013). The first few interrogatories focused on the issue of notice. The first interrogatory asked the jury to answer whether the defendant had actual notice of the unsafe condition of the floor where the plaintiff fell. If it answered no, the jury was instructed to move to the third interrogatory, which asked whether the defendant had constructive notice of the unsafe condition. If the jury also answered interrogatory three in the negative, the instructions required the jury to stop and to return a verdict for the defendant, and to "go no further." As we have already set forth, however, under a proper application of the nondelegable duty doctrine, a determination of notice would not be wholly dispositive of the issue of the defendant's liability, and, therefore, the court abused its discretion by issuing interrogatories requiring the jury to return a verdict for the defendant on finding that the defendant lacked actual or constructive notice

of the condition of the test area.

Finally, the defendant argues that regardless of any errors in the jury instructions and interrogatories regarding the nondelegable duty doctrine, the jury may have returned a verdict for the defendant for reasons unrelated to the claims raised by the plaintiff. The following additional facts are relevant to our consideration of this argument. The plaintiff testified at trial that upon walking around the corner from an aisle adjacent to the test area, he slipped on the wet floor in the test area. He claimed that he observed no warning signs indicating that the floor was slippery or wet, and did not encounter any equipment blocking his entry to the test area. Largie testified, however, that he had completely blocked off the test area and that in order for someone to have entered the test area, a person would have had to have gone over the "stuff" he used as a makeshift barrier, which included "mop buckets, the mop sticks, the vacuum, the scrubber and other stuff that we had there." Largie also testified that he did not observe any wet spots on the plaintiff's clothing or see any other indicators that the plaintiff had fallen in the test area.

The defendant contends that the jury could have found that no unsafe condition actually existed because it believed that Largie adequately had barricaded off the test area from customers or that the jury might not have believed that the plaintiff's fall and injuries were caused by an unsafe condition with the floor. The defendant's argument is unpersuasive, however, as it ignores that the court instructed the jury to follow the interrogatories provided in reaching its verdict and to consider them in the order presented. The first interrogatories directed the jury's attention to the issue of notice "of the unsafe condition of the floor where the plaintiff . . . fell." As written, the interrogatories appear to assume both that the floor was in an unsafe condition and that the plaintiff fell. It is unreasonable to construe the jury's verdict as having been reached on any basis other than lack of notice.

The judgment is reversed and the case is remanded with direction to grant the plaintiff's motion to set aside the verdict and for a new trial.

In this opinion the other judges concurred.

[1] The original complaint named Wal-Mart Stores, Inc., and Doug Yeakey, the Wal-Mart store manager, as defendants. The plaintiff later filed an amended complaint that corrected the name of the defendant Wal-Mart Stores, Inc., to Wal-Mart Stores East I Limited Partnership. On the first day of trial, the plaintiff indicated to the court that he was withdrawing his action as to Yeakey. Accordingly, we refer to Wal-Mart Stores East I Limited Partnership throughout this opinion as the defendant.

[2] The plaintiff also claims on appeal that the trial court committed plain error by permitting the defendant's counsel to suggest during his closing argument that the jury should draw an adverse inference from the absence of any witnesses corroborating the plaintiff's version of events without first making a threshold showing that those witnesses were, in fact, available to testify. See General Statutes § 52-216c; *Raybeck* v. *Danbury Orthopedic Associates, P.C.*, 72 Conn. App. 359, 370, 805 A.2d 130 (2002) (holding

improper for counsel to comment on plaintiff's failure to present witness without first providing evidentiary basis that witness was available to testify at trial). Because we reverse the judgment and remand the matter for a new trial on the basis of the plaintiff's claim of instructional error, we do not reach this additional, unpreserved claim.

[3] Although the store closed at 10 p.m., customers who were already inside the store were allowed to remain to complete their transactions.

[4] The plaintiff, who was complaining of pain in his back, right hip, and right arm and wrist, was examined at the hospital and released without treatment. The plaintiff later saw a private physician, who prescribed Motrin and referred the plaintiff to physical therapy. The plaintiff attended twenty-five physical therapy sessions over a period of six months. The plaintiff finished treatment in April, 2009, following which he continued to complain of discomfort in his lower back.

[5] More specifically, the plaintiff alleged in his complaint that the defendant had been negligent in one or more of the following ways: (1) it failed to maintain the floor in a reasonably safe condition; (2) it failed to dry the liquid on the floor; (3) it failed to remove the liquid from the floor; (4) it failed to promptly inspect the floor; (5) it failed to post appropriate signs warning of the danger on the floor; (6) it failed to inspect the surrounding area for leaks leading to the presence of liquid on the floor; and (7) it failed to warn of the liquid on the floor.

[6] Prior to the commencement of the trial, the plaintiff also had raised the applicability of the nondelegable duty doctrine in a motion in limine that asked the court to preclude the defendant "from offering any evidence of, mentioning, arguing, relying upon or asserting the defense of independent contractor in this case." The plaintiff argued in that motion that the defendant had failed to specially plead an independent contractor defense and that the nondelegable duty doctrine precluded the defendant from disclaiming responsibility for the negligence of its independent subcontractor Horizon, because, pursuant to that doctrine, the defendant was vicariously liable for Horizon's negligence with respect to maintaining the safety of the store's floors. The plaintiff also argued that an independent contractor defense was unavailing in this case because an actual agency relationship existed between the defendant and Horizon, and, pursuant to the law of agency, the defendant, as principal, is vicariously liable for the negligent acts of its agents. The court denied the motion in limine, concluding that the issues raised in the motion were legal issues that could be addressed in the court's charge to the jury depending upon the factual evidence adduced at trial.

[7] The record indicates that a charging conference was conducted in chambers, and that neither side placed on the record any summary or description of the matters discussed during the charging conference. Accordingly, the record does not reflect the basis for the court's decision not to use the plaintiff's proposed instruction with respect to the nondelegable duty doctrine.

[8] The jury interrogatories at issue provided as follows:

"<u>Plaintiff's Claims</u>

1. Do you find that the defendant, Wal-Mart Stores East I Limited Partnership, had actual notice of the unsafe condition of the floor where the plaintiff, Ricky Sola, fell?

_____ Yes _____ No

If you answered 'yes' continue to question #2. If you answered 'no' continue to question #3.

2. Wal-Mart Stores East I Limited Partnership had actual notice of the unsafe condition of the floor where the plaintiff, Ricky Sola, fell because (check all that apply):

_____ it had actual notice of the unsafe condition

_____ we find the subcontractor to be the agent of Wal-Mart and find the subcontractor to have created the unsafe condition.

Continue to question #4.

3. Do you find that Wal-Mart Stores East I Limited Partnership had constructive notice of the unsafe condition of the floor where the plaintiff, Ricky Sola, fell?

_____ Yes _____ No

If you answered 'no' to questions #1 and #3 you have entered a verdict in favor of Wal-Mart Stores East I Limited Partnership, and against the plaintiff, Ricky Sola, the foreperson should date and sign below and go no further."

[9] As noted in the comments to § 409 of the Restatement (Second) of Torts, the exceptions "are so numerous, and they have so far eroded the 'general rule,' that it can now be said to be 'general' only in the sense that it is applied where no good reason is found for departing from it." 2 Restatement

(Second), supra, § 409, comment b, p. 370.

[10] It is important to note that a property owner who hires an independent contractor to conduct repairs or to perform other work on the property is subject to being found vicariously liable for the negligence of the independent contractor with respect to a nondelegable duty only if the property owner also has retained possession and control of the property. See *Archambault* v. *Soneco/Northeastern, Inc.*, 287 Conn. 20, 54, 946 A.2d 839 (2008) (trial court improperly instructed jury to apply nondelegable duty doctrine in case where evidence failed to establish defendant retained or exercised control over work site); *Millette* v. *Connecticut Post Ltd. Partnership*, 143 Conn. App. 62, 75, 70 A.3d 126 (2013) (nondelegable duty doctrine only applies if plaintiff establishes defendant maintained possession and control of property). In the present case, the court found that the defendant had admitted in its answer to the complaint to retaining possession and control of the test area during the remodeling process, and thus possession and control was not a matter before the jury.

[11] After the court finished with its jury instructions, it asked the parties outside the presence of the jury for any "exceptions, suggestions, comments." The plaintiff did not object at that time to the court's instruction on the nondelegable duty doctrine or its failure to instruct on vicarious liability. We nevertheless find that those issues were adequately preserved for appellate review by the plaintiff having filed a request to charge. See Practice Book § 16-20; *Sevigny* v. *Dibble Hollow Condominium Assn., Inc.*, 76 Conn. App. 306, 317, 819 A.2d 844 (2003).